**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA  92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***
*(additional attorneys on signature page)*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MICHAEL GAMMINO, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE KROGER CO.; <br><br> Defendant. | Case No:_____ <br><br> **CLASS ACTION COMPLAINT** <br> **FOR VIOLATIONS OF:** <br><br> **1. OHIO CONSUMER SALES PRACTICES ACT, ORC 1345.01 ET SEQ** <br> **2. CAL. CONSUMERS LEGAL REMEDIES ACT, CAL. CAL. CIV. CODE §§1750 *et seq.*** <br> **3. CAL. UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§17200 *et seq.*** <br> **4. CAL. FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE §§17500 *et seq.*** <br> **5. BREACH OF EXPRESS WARRANTY** <br> **6. BREACH OF IMPLIED WARRANTY** <br> **7. COMMON LAW FRAUD BY OMISSION** <br> **8. COMMON LAW NEGLIGENT MISREPRESENTATION** <br> **9. MONEY HAD AND RECEIVED** <br><br> **DEMAND FOR JURY TRIAL** |

## **TABLE OF CONTENTS**

I.     JURISDICTION AND VENUE ................................................................1

II.    NATURE OF THE ACTION ..................................................................2

III.   PARTIES ...............................................................................................3

IV.   FACTUAL ALLEGATIONS ..................................................................4

1. Kroger Does Not Disclose That Its Products Are Artificially Flavored.........................4

2. Federal and State Laws Require Kroger to Disclose the Artificial Flavor in Its Products................................................................................8

3. Kroger Competitors Label Their Products Lawfully. .................................11

4. Plaintiff and the Class Pay a Price Premium for the Misbranded Products.................12

V.    DELAYED DISCOVERY .....................................................................13

VI.   CLASS ACTION ALLEGATIONS ......................................................14

VII.  CAUSES OF ACTION .........................................................................17

        First Cause of Action: ........................................................................17

        Violation of Ohio Consumer  Sales Practices Act, ORC 1345.01 et seq ...............17

        (All Ohio- and Similar-States' Plaintiffs v. Kroger) .....................................17

        Second Cause of Action:  Violation of the CLRA (California Sub-Class)..............19

        Third Cause of Action:  Violation of the UCL, Unlawful and Unfair Prongs (California Sub-Class) ........................................................................20

        Fourth  Cause  of  Action:    Violation  of  California  False  Advertising  Law (California Sub-Class) ..........................................................................23

        Fifth Cause of Action: Breach of Express Warranty ................................24

        Sixth Cause of Action:  Breach of Implied Warranty ...............................25

        Seventh Cause of Action:  Common Law Fraud by Omission ...........................27

        Eighth Cause of Action:  Negligent Misrepresentation.................................28

        Ninth Cause of Action: Money Had and Received .....................................28

VIII. PRAYER FOR RELIEF ........................................................................29

IX.   JURY DEMAND ....................................................................................30

Michael C. Gammino ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, hereby brings this action against Defendant The Kroger Company ("Kroger", "Defendant", or "Defendants"), and upon information and belief and investigation of counsel, alleges as follows:

## I.   <u>JURISDICTION AND VENUE</u>

1.     Plaintiff brings this proposed class action in this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005).

2.     This Court has subject matter jurisdiction over this proposed class action under CAFA, which provides the Federal courts with original jurisdiction over any class action in which any member of the plaintiff class is a citizen of a state different from any defendant and the matter in controversy exceeds $5 million in the aggregate exclusive of interest and costs.

3.     Minimal diversity as required by 28 U.S.C. §§ 1332(a)(1), (d)(2)(A) is satisfied as Plaintiff is a citizen of California and Defendant Kroger is a citizen of Ohio.

4.     The jurisdictional amount in controversy is satisfied. Plaintiff alleges on information and belief that the total claims of the members of the proposed Class in this action are in excess of $5 million in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).

5.     This matter is not a "local controversy" pursuant to 28 U.S.C. § 1332(d)(5)(B). Plaintiff alleges on information and belief that more than two-thirds of the members of the proposed Class are citizens of states other than California, where this action is filed, and that the proposed Class contains more than 100 persons.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in this district, and Plaintiff purchased the subject Products of this action in this judicial district. Defendant conducts business and engages in substantial transactions here, and many of the transactions

complained of herein occurred in this district including specifically the transactions between Plaintiff and Defendant Kroger.

7. This Court has both general and specific personal jurisdiction over the Defendant.

8. The Court has personal jurisdiction over Defendant because the company has affirmatively established and maintained contacts with the State of California. This Court further has specific personal jurisdiction arising from Kroger's decision to advertise and sell the Products in California. Defendant has sufficient minimum contacts with this State and sufficiently avail themselves of the markets of this State through the promotion, sales, and marketing of the Products within the State to render the exercise of jurisdiction by this Court reasonable.

9. Venue is proper in this County because the Defendant conducts business here, engages in substantial transactions in this County, and many of the transactions complained of herein occurred in this County including specifically the transactions between Plaintiff and Defendant.

## II.   **NATURE OF THE ACTION**

10. This is a national consumer class action for the violation of state consumer protection, unfair competition, and false advertising laws and statutes, and for common-law warranty and consumer protection violations.

11. Defendant Kroger manufactures, distributes, advertises, markets, and sells a variety of fruit-flavored sparkling-water beverage products.

12. Kroger labels and advertises these sparkling-water beverages as, for example, "Black Cherry".

13. Other of the products that are the subject of this action include "Strawberry", "Black and Blueberry", "White Grape", "Mixed Berry", "Kiwi Strawberry", "Peach", "Blueberry Pomegranate", and "Pineapple Coconut" (collectively with 'Black Cherry,' the "Products.")

CLASS ACTION COMPLAINT

14.    All of these products' front-of-package labels prominently display, in a conspicuous advertising panel, the name of one or more natural fruits or berries.

15.    These fruit or berry flavors are advertised without any label notice disclosing that the Products are artificially flavored.

16.    All of the Products contain artificial flavoring chemicals that simulate the advertised fruit flavors, but Defendant conceals this fact from consumers.

17.    Because these products' labels conceal the fact that the Products are made with artificial flavors, that labeling is false and misleading. These products are misbranded under Federal and state law.

18.    By operation of federal and state law, all of the Product labels are fraudulent and all of the Products are misbranded and unlawful to sell in the United States.

19.    Defendant's packaging, labeling, and advertising scheme for these Products is intended to give consumers the impression that they are buying a premium, all-natural product instead of a product that is artificially flavored.

20.    Plaintiff, who purchased selected Products multiple times and was deceived by Defendant's unlawful conduct, brings this action on his own behalf and on behalf of consumers nationwide to remedy Defendant's unlawful acts.

21.    On behalf of the Class as defined herein, Plaintiff seeks an order compelling Defendant to, *inter alia*: (1) cease packaging, distributing, advertising and selling the Products in violation of U.S. FDA regulations and state consumer protection laws; (2) inform consumers regarding the Products' misbranding; (3) award Plaintiff and the other Class-members restitution, actual damages, and punitive damages; and (4) pay all costs of suit, expenses, and attorney fees.

### III.    PARTIES

22.    Defendant The Kroger Co. ("Kroger") is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

23.    Kroger is registered with the Ohio Secretary of State as The Kroger Co., under Ohio entity number 14931.

24.     Kroger is registered with the California Secretary of State to do business in California as The Kroger Co. under entity number C0692542

25.     Kroger manufactures, advertises, markets, distributes, and sells the Products in Ohio, in California, and throughout the United States.

26.     Plaintiff Michael Gammino is a resident and citizen of Santa Cruz County, California, who purchased the Products multiple times in Santa Cruz County and Monterey County for personal and household consumption.

## IV.     FACTUAL ALLEGATIONS

### 1. Kroger Does Not Disclose That Its Products Are Artificially Flavored.

27.     The Product front labels display the name of each Product's namesake fruits or berries or both.

28.     At least some of the Products during the proposed Class period also displayed pictures of those ripe, fresh fruits or berries on the front labels.

29.      These label representations convey to the consumer by operation of federal and state law that the Product is made exclusively from and is flavored only with natural fruits and fruit flavors.

30.     None of the Products include on either the front- or back-label any indication that the Product contains artificial flavoring chemicals.

31.     All of the Products included herein omit the legally-required disclosures.

32.     All the Products, however, are made with a synthetic chemical flavoring ingredient identified in the product ingredient list as "malic acid".

33.     The "malic acid" that Kroger puts in its Products is not a natural flavoring material as defined by federal and state law; it is a synthetic chemical manufactured in a petrochemical factory from petroleum feedstocks.

34.     The Product labels therefore violate California and other states' statutory and common-law consumer protection laws in a minimum of three different ways.

35.     First, because the Products contains added flavoring ingredients that simulate

4

and reinforce each Product's characterizing flavors, the product front label is required by law to disclose the presence of those additional flavorings rather than misleadingly suggest that the Product's flavor is conferred only by natural fruit juices. *See, e.g*., Cal. Health & Saf. Code §109875 *et seq*, (Sherman Law); 21 CFR 101.22.[1]

36.    Second, the Product ingredient list violates Federal and state law because it misleadingly identifies the malic acid constituent only as a generic "malic acid" instead of using the correct, specific, non-generic chemical name of the ingredient as required by food labeling regulations.  *See* 21 CFR 101.4(a)(1). Because Defendant uses a misleading and unlawful generic name for this ingredient, consumers have no chance to identify it as a synthetic chemical or to know that the Product is artificially flavored.

37.    Third, and even more deceptive, is the fact that the Product labels not only omit the required specific "Artificial Flavor" or "Artificially Flavored" label statement, the Product labels also fraudulently inform the consumer that the Product is "Naturally Flavored" even though the Products all contain an undisclosed artificial flavor made from petrochemicals.

38.    Below on the next page is a true and accurate photographic image of the "Mixed Berry" Product showing the Product's front-label.

---

[1] California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Saf. Code §109875 *et seq*, like several other states' consumer protection laws, incorporates into California law all regulations enacted pursuant to the U.S. Food Drug and Cosmetic Act. Any act or omission that would violate an FDCA regulation will also violate California's Sherman Law. *Id*. at §110100. Other states' statutory or common-law consumer protection laws also reference, incorporate by reference, or are guided by FDA regulations.

CLASS ACTION COMPLAINT

39.     A representative Product label, "Mixed Berry" flavor:



40.     As shown, the Product label nowhere discloses that the Product contains an artificial flavor.

41.     The Products' rear labels list the product ingredients as:  "Carbonated water, citric acid, malic acid, natural flavor, potassium benzoate (preservative), sucralose, potassium citrate, neotame, acesulfame potassium."

42.     All of the Products contain the artificial flavoring ingredient dl-malic acid but conceal this fact from consumers.

43.     All Product ingredient lists fail to identify the "malic acid" in the Product as an artificial flavor.

44.     All Product front labels fail to inform the consumer, as required by federal and state law, that the Product contains artificial flavor.

45.     Federal and state consumer protection laws require all food products that

CLASS ACTION COMPLAINT

contain artificial flavor to disclose this fact to consumers prominently on both the front and back labels.

46.    Defendant fails to do so, deceptively and unlawfully persuading consumers that these Products are "Naturally Flavored" when they in fact contain artificial flavors.

47.    Defendant intentionally conceals from consumers the fact that its Products are artificially flavored.

48.    There is a naturally-occurring compound sometimes referred to informally as malic acid.

49.    Natural malic acid is identified by its proper scientific name, "l-malic acid." L-malic acid is found naturally in fruits and berries; it provides a signature characterizing tart flavor of fruits.

50.    Kroger, however, uses instead in its Products a synthetic manufactured flavoring chemical called dl-malic acid,[2] a racemic mixture of d- and l-isomers.

51.    This kind of 'malic acid' is not naturally-occurring but is in fact made in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—after an intermediate conversion to maleic anhydride through a series of chemical reactions involving toxic chemical precursors and byproducts.

52.    Maleic anhydride, also called 2,5-Furandione, is a common chemical precursor used in the industrial manufacture of various other chemicals and intermediaries as well as malic acid. It is commonly used as a feedstock in chemical manufacturing processes to make paints, polymeric plastic resins, industrial coatings, pesticides and agricultural chemicals[3]-- or, in this case, to make the artificial flavor that Defendant uses in the Products.

---

[2] D-malic acid is also called d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.
[3] Maleic anhydride, CAS No. 108-31-6; https://www.epa.gov/sites/production/files/2016-09/documents/maleic-anhydride.pdf, visited August 28, 2017.

CLASS ACTION COMPLAINT

**2. Federal and State Laws Require Kroger to Disclose the Artificial Flavor in Its Products.**

53.     It is unlawful for Kroger to include artificial flavor in the Products and fail to disclose the chemical ingredient to consumers.

54.     Federal and state consumer protection laws define as an artificial flavor "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof."[4]

55.     The dl-malic acid that Kroger puts in these Products is derived from petrochemicals, not from "a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material. . . ", and it provides a characterizing tart fruit flavor for the Products. The "malic acid" that Kroger puts in its Products is therefore an artificial flavor under federal and state consumer protection laws.

56.     Both the natural and unnatural forms of malic acid are used as flavorings and are considered GRAS (generally recognized as safe) for that use. The dl-malic acid form, used by Kroger, however, has never been thoroughly studied for its health effects in humans despite repeated cautions from health organizations that it should be.

57.     Both forms of malic acid give a "tart, fruity" flavor to food products.

58.     Kroger uses the artificial petrochemical dl-malic acid in its Product to simulate the "tart, fruity" flavor of fruit but pretends otherwise, improperly conflating the natural and the artificial flavorings and deceiving consumers.

59.     Because it contains an artificial flavor, federal and state law require the Products to display both front- and back-label disclosures to inform consumers that they are artificially flavored.

60.     The Products have none of the required disclosures.

---

[4] Cal. Health & Saf. Code §109875, *e.g.;* 21 CFR 101.22(a)(1).

61.   The Products therefore violate federal and state consumer protection laws.

62.   California law, for example, incorporating and mirroring U.S. Food, Drug, and Cosmetic Act regulations by reference, requires that a food's label accurately describe the food product and its characterizing flavors. *See*, 21 C.F.R. 102.5(a).

63.   Under California's Sherman Law, adopting FDA regulations as California law, a recognizable primary flavor identified on the front label of a food Product is referred to as a "characterizing flavor".

64.   California law, like other states' laws that reference the Federal regulations, requires that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then "such flavor shall be considered the characterizing flavor". *See* 21 C.F.R. 101.22(i).

65.   All of the fruits listed on the Product front-labels are primary recognizable flavors and are therefore by law considered characterizing flavors.

66.   If a product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both. If any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the food must be prominently labeled as "Artificially Flavored." 21 C.F.R. 101.22(i) (3), (4).

67.   Federal regulations at 21 C.F.R. 101.22(c) require all foods containing artificial flavoring to include:

> A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

68.   A food product's label must also include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price

9

or consumer acceptance . . .  and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. 102.5(c).

69.     Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice. *Id.*

70.     The Product labels do not include any of the required label statements.

71.     The Product labels therefore violate Federal and California law.

72.     Other states' laws similarly require that food product labels be accurate and complete and not misleading.

73.     California's Health & Safety Code, for example, states that "Any food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact."  Cal. Health & Saf. Code §110740.

74.      California law, like other states' laws, therefore required Defendant to place on the Products' labels a notice to inform consumers that the Products are artificially flavored.

75.     Defendant failed to accurately label the Products, deceiving consumers and violating Federal and state law.

76.     Under state as well as federal law, Defendant was required to place prominently on the Products' front labels a notice sufficient to allow consumers to understand that the Products contain artificial flavorings.

77.     Defendant failed to do so.

78.     Accordingly, the Products are misbranded and illegal to distribute or sell in commerce in the U.S.

79.     Plaintiff was unaware that the Products contained artificial flavors when he purchased them.

80.     When purchasing the Products, Plaintiff was seeking products of particular qualities, specifically products that were flavored only with the natural ingredients claimed on the label and which did not contain artificial flavors.

81.   Plaintiff is not alone in these purchasing preferences. Forbes Magazine reported that 88% of consumers polled recently indicated they would pay more for foods perceived as natural or healthy. "All demographics [of consumers]—from Generation Z to Baby Boomers—say they would pay more" for such products, specifically including foods with no artificial flavors.[5]

82.   Plaintiff lost money as a result of Defendant's conduct because he purchased Products that contained undisclosed and undesirable artificial flavors at a price premium.

83.    Defendant's marketing of the Products reflects this knowledge of consumers' preferences for natural products -- not by making the Products only with natural ingredients, but by concealing from consumers that the Products contain artificial flavors.

### 3. Kroger Competitors Label Their Products Lawfully.

84.   Defendant Kroger not only deceives consumers but also gains an unfair commercial advantage in the marketplace by labeling the Products deceptively.

85.   Manufacturers of competing beverage products label their products lawfully.

86.   Other manufacturers of artificially-flavored fruit-flavored drink products, for example, accurately label their products as "Artificially Flavored."

87.   Other competing manufacturers, offering products whose labels suggest just as Kroger does that their products are naturally flavored, truly are made only with natural ingredients.

88.   Defendant, however, conceals the use of artificial flavoring, deceiving consumers, illegally cutting costs and increasing profits, and competing unfairly and unlawfully in the marketplace, hurting their competitors and the marketplace as well as consumers.

_____

[5] "Consumers Want Healthy Foods--And Will Pay More For Them"; Forbes Magazine, February 15, 2015. https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5; visited April 7, 2017.

CLASS ACTION COMPLAINT

89.     Defendant's conduct injures competing manufacturers that do not engage in the same illegal behavior. Those manufacturers compete for market share and limited shelf space, as well as for consumers' buying preferences and dollars. Kroger competitors do so lawfully. Kroger does not.

**4. Plaintiff and the Class Pay a Price Premium for the Misbranded Products.**

90.     Plaintiff purchased the Products in California during the Class Period as defined herein.

91.     Plaintiff purchased the Products multiple times annually since 2015 at various locations in California, most recently at Food4Less and Lucky's Supermarkets in and around Santa Cruz, California.

92.     The Products were purchased at the marked retail prices, typically $0.89 or $0.99 for a 33.8-ounce plastic bottle and from time to time at other promotional prices.

93.     Plaintiff's most recent purchase was in February 2021.

94.     Plaintiff first discovered Defendant's unlawful conduct described herein in 2021, when he learned the Products' characterizing flavors were deceptively simulated and reinforced using artificial flavoring even though Defendant failed to disclose that fact on the Products' labels.

95.     Plaintiff was deceived by and relied upon the Products' deceptive labeling, and specifically Defendant's omission of the fact that the Products contained artificial flavorings. Plaintiff purchased the Products believing they were naturally-flavored, based on the Products' deceptive labeling and failure to disclose the artificially flavoring.

96.     Plaintiff, as a reasonable consumer, is not required to subject consumer food products to laboratory analysis, to scrutinize the back of the label to discover that the product's front label is false and misleading, or to search the label for information that state law and federal regulations require be displayed prominently on the front.

97.     Defendant, but not Plaintiff, knew or should have known that the Products' labeling was false and in violation of federal regulations and state law.

CLASS ACTION COMPLAINT

98.     Because Plaintiff reasonably assumed the Products to be free of artificial flavoring based on the Products' labels, when they were not, he did not receive the benefit of his purchases. Instead of receiving the benefit of products free of artificial flavoring, he received a Product that was unlawfully labeled to deceive the consumer into believing that it was exclusively naturally flavored and contained no artificial flavoring, in violation of federal and state labeling laws and regulations.

99.     Plaintiff would not have purchased the Products in the absence of Defendant's misrepresentations and omissions. Had Defendant not violated state and federal law, Plaintiff would not have been injured.

100.    As described above, products the consumer believes to be naturally-flavored sell at a price premium compared to products that contain artificial flavors.

101.    The Products were therefore worth less than Plaintiff and other Class members paid for them; both the plaintiff and the class members would not have paid as much for the Products absent Defendant's false and misleading statements and omissions.

102.    Plaintiff and the Class lost money as a result of Defendant's unlawful acts. Plaintiff, and each Class member, altered his or her position to their detriment and suffered loss in an amount equal to the price premium paid for the Products as falsely labeled and advertised.

103.    Plaintiff intends to, desires to, and will purchase the Products again when he can do so with the assurance that Products' labels, which indicate that the Products are solely naturally-flavored, are lawful and consistent with the Products' ingredients.

## V.    DELAYED DISCOVERY

104.    Plaintiff did not discover that  Defendant's labeling of the Products was false and misleading until April 2021 when he learned the Products contained undisclosed artificial flavoring.

105.    Plaintiff is a reasonably diligent consumer who exercised reasonable diligence in his purchase and consumption of the Products. Nevertheless, he would not have been able to discover Defendant's deceptive practices and lacked the means to discover them

given that, like nearly all consumers, he relies on and is entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law. Furthermore, Defendant's labeling practices and non-disclosures—in particular, misnaming and failing to correctly identify the artificial flavors in the ingredient list, or to disclose that the Products contained artificial flavoring, or to accurately identify the kind of malic acid that Kroger puts in the Products, impeded Plaintiff's and the Class members' abilities to discover the deceptive and unlawful labeling of the Products throughout the Class Period.

106. Because Defendant actively concealed the illegal conduct, preventing Plaintiff and the Class from discovering the violations of state law, Plaintiff and the Class are entitled to delayed discovery and an extended Class Period tolling the applicable statute of limitations.

## VI. CLASS ACTION ALLEGATIONS

107. Plaintiff brings this action on behalf of himself and all others similarly situated (the "Class") pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

108. The Class is defined as follows:

> All U.S. citizens who purchased the Products in the United States on or after January 1, 2015, and until the date the Class is certified by the Court, excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

109. The Plaintiff also represents a proposed California sub-class.

110. The proposed California sub-class is defined as follows:

> All California residents who purchased the Products in California on or after January 1, 2015, and until the date the Class is certified by the Court, excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

111. During the Class Period, the Products unlawfully contained the undisclosed artificial flavors d-malic acid or dl-malic acid and were otherwise improperly labeled.

14

Defendant failed to label the Products to disclose the presence of artificial flavors as required by federal and state law.

112.   During the Class Period, Class members purchased one or more of the Products and incurred the same injuries as alleged herein for the Plaintiff.

113.   The legal violations, false advertising, and consumer and market injuries resulting from Defendant's false, misleading, and unlawful advertising, marketing, labeling, and sales of the Products are sufficiently similar to those associated with Defendant's identical conduct with respect to the Products purchased by Plaintiff to make it reasonable to include Class members' purchases of all the Products in this Class Action.

114.   All Class members' purchases of these Products are therefore included herein.

115.   The proposed Class meets all criteria for a class action, including numerosity, typicality, superiority, and adequacy of representation; there is a well-defined community of interest in questions of law and fact common to the Class.

116.   The proposed Class satisfies numerosity. The Products are offered for sale at several thousand supermarkets; the Class numbers at minimum in the tens of thousands. Individual joinder of the class members in this action is impractical. Addressing the class members' claims through this class action will benefit Class members, the parties, and the courts.

117.   The proposed Class satisfies typicality. Plaintiff's claims are typical of and are not antagonistic to the claims of other Class members. Plaintiff and the class members all purchased the Products, were deceived by the false and deceptive labeling, and lost money as a result.

118.   The proposed Class satisfies superiority. A class action is superior to any other means for adjudication of the Class members' claims because each class member's claim is modest, based on the Product's retail purchase price which is generally under $5.00. It would be impractical for individual class members to bring individual lawsuits to vindicate their claims. If this action is not brought as a class action, Defendant can continue to deceive consumers and violate federal and state law with impunity.

CLASS ACTION COMPLAINT

119.   Because Defendant's misrepresentations were made on the label of the Product itself, all Class members including Plaintiff were exposed to and continue to be exposed to the omissions and affirmative misrepresentations.

120.   The proposed Class representative satisfies adequacy of representation.  The Plaintiff is an adequate representative of the Class as he seeks relief for the Class, his interests do not conflict with the interests of the Class members, and he has no interests incompatible with those of other class members. Plaintiff has retained counsel competent in the prosecution of consumer fraud and class action litigation.

121.   There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class members in this action.

122.   Questions of law and fact common to Plaintiff and the Class include:

      a.    Whether Defendant failed to disclose the presence of an artificial flavoring ingredient in the Products;

      b.    Whether Defendant's labeling omissions and representations constituted false advertising under state and federal law;

      c.    Whether Defendant's conduct constituted a violation of the Ohio Consumer Protection Act, Ohio Revised Code 1345.01 et seq;

      d.    Whether Defendant's conduct constituted a violation of state consumer protection statutes including, for example, and without limitation, California's Consumer Legal Remedies Act, California's Unfair Competition Law, California's False Advertising Law, and other states' similar statutes;

      e.    Whether Defendant's conduct constituted a violation of state common-law consumer protection laws;

      f.    Whether Defendant's advertising and label statements describing fruit flavors were an affirmative representation of the Product's composition creating an express warranty;

16

g.    Whether Defendant's conduct constitutes a breach of implied warranties under state law;

h.    Whether Defendant's conduct violates U.S. Food and Drug Administration labeling regulations and corresponding state law;

i.    Whether the statute of limitations should be tolled on behalf of the Class due to Defendant's deceptive conduct in concealing the presence of artificial ingredients in its products;

j.    Whether Plaintiff and the Class are entitled to restitution, rescission, actual damages, punitive damages, attorney fees and costs of suit, and injunctive relief; and

k.    Whether members of the Class are entitled to any such further relief as the Court deems appropriate.

123.    Class members lost money as a result of Defendant's unlawful behavior.

124.    Class members altered their position to their detriment and suffered loss in an amount equal to the price premium they paid for the Products as falsely labeled and advertised.

125.    Further, Defendant have acted on grounds applicable to the entire Class, making final injunctive relief or declaratory relief appropriate for the Class as a whole.

126.    Class treatment is therefore appropriate for this Action.

## VII.    CAUSES OF ACTION

### First Cause of Action:

### Violation of Ohio Consumer  Sales Practices Act, ORC 1345.01 et seq

(All Ohio- and Similar-States' Plaintiffs v. Kroger)

160.    Plaintiff realleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

161.    Kroger made and distributed, in Ohio and in interstate commerce arising from conduct in Ohio, Products that unlawfully fail to disclose the presence of artificial flavoring as required by federal and state food-labeling regulations.

17

162.   The Ohio Consumer Sales Practices Act (CSPA), Ohio Revised Code (ORC) 1345.01 et seq, protects consumers from unfair, deceptive, and unconscionable sales practices.

163.   Rules governing the application of the CSPA are found in the Ohio Administrative Code (OAC) 109:4-3-01 et seq.

164.   The CSPA applies to all consumer transactions.

165.   A consumer transaction is the purchase, solicitation for purchase, of a product or service that is intended for home, family, or personal use.

166.   Plaintiff's purchases and all Class members purchases of the Products were consumer transactions concerning goods intended for home, family, or personal use.

167.   The CSPA requires sellers and suppliers to accurately represent the characteristics of every product they sell or provide, to make no misrepresentations about the nature of products, and to not mislead consumers in any of the particulars of the goods purchased.

168.   Plaintiff and the Class are "consumers", the Products purchased are "goods", and all purchases described herein are consumer transactions as defined in the Act.

169.   Kroger's failure to label the Products in accord with federal and state labeling regulations, omitting the required information that the Products contain artificial flavoring, was an unfair, deceptive, unlawful and unconscionable commercial practice.

170.   Kroger's conduct violates Ohio law.

171.   Kroger's conduct in unlawfully packaging, labeling, advertising, and distributing the Product in commerce in Ohio violated the Ohio CSPA.

172.   The Products' labels fail to disclose that the Products contain synthetic artificial flavoring, in violation of Federal and state law.

173.   The Products contain the synthetic flavoring chemical dl-malic acid.

174.   The dl-malic acid is a synthetic flavoring material which creates, simulates or reinforces the characterizing flavor of the Products.

175.   The dl-malic acid in the Products is not derived from any natural material as

18

defined in the applicable state regulations and is therefore, by law, an artificial flavoring.

176.   Kroger fails to inform consumers of the presence of artificial flavors in the Products, on either the front or back-label as required by law.

177.   As a result of Kroger's violations, Plaintiff and the Class suffered ascertainable losses in the form of the price premiums they paid for the deceptively labeled and marketed Products, which they would not have paid had these Products been labeled truthfully, and in the form of the reduced value of the Product purchased compared to the Product as advertised.

178.   Kroger's violations were willful and knowing. Kroger is and at all times relevant was aware that the Products contained artificial flavoring chemicals yet failed to label them as artificially flavored.

179.   Defendant Kroger's violative conduct occurred in Ohio at Kroger's corporate headquarters. Under traditional choice of law procedures, Defendant Kroger's conduct may therefore be found to have uniformly violated Ohio consumer protection law for all Class members.

180.   Kroger's labeling and advertising statements, which communicated to consumers that the Products contain no artificial flavors and concealed the fact that they contain a synthetic artificial flavor, were untrue and misleading, and Kroger knew or at a minimum by the exercise of reasonable care should have known those actions were false or misleading.

181.   Kroger violated the CSPA with respect to all plaintiffs.

**Second Cause of Action:  Violation of the CLRA**

**(California Sub-Class)**

127.   Plaintiff realleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

128.   The California Consumers Legal Remedies Act, Cal. Civ. Code §1750 et seq., prohibits any unfair, deceptive and unlawful practices, and unconscionable commercial practices in connection with the sale of any goods or services to consumers.

129. Plaintiff and the Class are "consumers" as defined by Cal. Civ. Code §1761(d). The Products are a "good" as defined by Cal. Civ. Code §1761.

130. Defendant's failure to label the Products in accord with federal and state labeling regulations, omitting the required information that the Products contain artificial flavoring, was an unfair, deceptive, unlawful and unconscionable commercial practice.

131. Defendant's conduct violates the Consumer Legal Remedies Act.

132. As a result of Defendant's violations, Plaintiff and the Class suffered ascertainable losses in the form of the price premiums they paid for the deceptively labeled and marketed Products, which they would not have paid had these Products been labeled truthfully, and in the form of the reduced value of the Product purchased compared to the Product as advertised.

133. Plaintiff currently seeks injunctive relief for Defendant's violations of the CLRA. Pursuant to §1782 of the CLRA, Plaintiff will notify Defendant in writing of the particular violations of §1770 of the CLRA and demand that Defendant rectify the actions described above by providing monetary relief, agreeing to be bound by its legal obligations, and giving notice to all affected customers of its intent to do so. If Defendant declines to take adequate corrective within 30 days of the mailing of Plaintiff's demand letter, then Plaintiff will seek leave to amend this complaint to add a claim for damages, restitution, and attorneys' fees and costs pursuant to the CLRA.

**Third Cause of Action:  Violation of the UCL, Unlawful and Unfair Prongs**
**(California Sub-Class)**

134. Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

135. Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice. Section 17200 specifically prohibits any "unlawful . . . business act or practice."

136. The UCL borrows violations of other laws and statutes and considers those

20

violations also to constitute violations of California law.

137.    Defendant's practices as described herein were at all times during the Class Period and continue to be unlawful under, *inter alia*, FDA regulations adopted into California's Sherman Law.

138.    Defendant's conduct in unlawfully packaging, labeling, advertising, and distributing the Product in commerce in California violated California law.

139.    The Products' labels fail to disclose that the Products contain synthetic artificial flavoring, in violation of California's Sherman Law among others.

140.    The Products contain the synthetic dl-malic acid.

141.    The dl-malic acid is a synthetic flavoring material which creates, simulates or reinforces the characterizing fruit flavors of the Products.

142.    The dl-malic acid in the Products is not derived from any natural material as defined in the applicable state regulations and is therefore, by law, an artificial flavoring.

143.    Defendant fail to inform consumers of the presence of artificial flavors in the Products, on either the front or back-label as required by law.

144.    Defendant's conduct further violates other applicable California and federal regulations as alleged herein.

145.    Defendant's practices are therefore unlawful under Section 17200 et seq of the California Civil Code.

(Unfair Prong)

146.    Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") also prohibits any "unfair . . .business act or practice." Defendant's practices violate the Unfair Competition Law "unfair" prong as well.

147.    Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because the conduct is unethical and injurious to California citizens and the utility of the conduct to Defendant does not outweigh the gravity of the harm to consumers.

148.    While   Defendant's decision to label the Products deceptively and in

21

violation of California law may have some utility to Defendant in that it allows Kroger to sell the Products to consumers who otherwise would not purchase an artificially-flavored food product at the premium retail price, or at all, if it were labeled correctly, and to realize higher profit margins than if they formulated or labeled the Products lawfully, this utility is small and far outweighed by the gravity of the harm inflicted on California consumers.

149.   Defendant's conduct also injures competing food product manufacturers, advertisers, and sellers, that do not engage in the same unfair and unethical behavior.

150.   Moreover, Defendant's practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the Sherman Law, the False Advertising Law, and the FDA regulations cited herein.

151.   Plaintiff's purchases and all sub-class members' purchases of the Products all took place in California.

152.   Defendant labeled the Products in violation of federal regulations and California law requiring truth in labeling.

153.   Defendant failed to disclose material facts to Plaintiff and the Class in Defendant's advertising and marketing of the Product.

154.   Defendant's conduct is unconscionable because, among other reasons, it violates 21 C.F.R. 101.22(c), which requires all foods containing artificial flavoring to include:

> A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

155.   Defendant's conduct is also "unconscionable" because it violates, inter alia, 21 C.F.R. 101.22, which requires all food products for which artificial flavoring provides a characterizing flavor to disclose this fact prominently on the product's front label.

156.   Defendant intended that Plaintiff and the Class rely on Defendant's acts and omissions to induce them to purchase the Products.

157.   Had Defendant disclosed all material information regarding the Products, Plaintiff and the Class would not have purchased the Products or would only have been willing to pay less for the Products than they did.

158.   Plaintiff suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising:  he was denied the benefit of the bargain when he purchased the Products based on Defendant's violation of the applicable laws and regulations, and purchased the Products in favor of competitors' products, which are less expensive, contain no artificial flavoring, or are lawfully labeled.

159.   Defendant's acts, omissions and practices detailed herein proximately caused Plaintiff and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, the price premium of monies spent to purchase the Products they otherwise would not have, and they are entitled to recover such damages, together with appropriate penalties, including restitution, damages, attorneys' fees and costs of suit.

160.   Section 17200 also prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendant engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code §17200.

161.   Pursuant to California Business & Professions Code §17203, Plaintiff seeks an order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to return to the Class the amount of money improperly collected.

**Fourth Cause of Action:  Violation of California False Advertising Law**
**(California Sub-Class)**

162.   Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

163.   Kroger made and distributed, in California and in interstate commerce, Products that unlawfully fail to disclose the presence of artificial flavoring as required by federal and state food-labeling regulations.

164.   The Products' labeling and advertising portrays the Products as if they were solely naturally-flavored, and in addition falsely claims that the Products are "Naturally Flavored."

165.   Under California's False Advertising Law, Business and Professions Code §17500 *et seq*,

> "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device . . . any statement, concerning that real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. . . ." Cal. Bus. & Prof. Code §1.7500

166.   Defendant's labeling and advertising statements on the Products' labels and in advertising and marketing materials are "advertising device[s]" under the FAL.

167.   Defendant's labeling and advertising statements, which communicated to consumers that the Products are "Naturally Flavored" and concealed the fact that they contain a synthetic artificial flavor, were untrue and misleading, and Defendant knew or at a minimum by the exercise of reasonable care should have known those actions were false or misleading.

168.   Defendant's conduct violated California's False Advertising Law.

### Fifth Cause of Action: Breach of Express Warranty

169.   Plaintiff realleges and incorporates by reference the allegations found elsewhere in the Complaint as if set forth in full herein.

170.   The Products' labels warrant that those products are "Naturally Flavored."

171.   The Products' front label representations also misleadingly warrant that the Products are flavored only with natural fruits with no artificial flavors.

172.   These promises became part of the basis of the bargain between the parties and thus constituted an express warranty, which Kroger breached:   the Products are artificially flavored.

173.   Kroger sold the goods to Plaintiff and the other Class members who bought the goods from Kroger.

174.   Plaintiff and the Class did not receive goods as warranted by Defendant.

175.   Within a reasonable amount of time after Plaintiff discovered that the Products contained synthetic flavorings, Plaintiff notified Kroger of such breach.

176.   As a proximate result of this breach of warranty by Kroger, Plaintiff and the Class have been damaged in an amount to be determined at trial.

177.   Defendant's conduct constituted a breach of state common law express warranties for the Products.

178.   As a proximate result of this breach of warranty, Plaintiff and other Class members have been damaged in an amount to be determined at trial.

179.   As a result, Plaintiff and the Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Kroger was unjustly enriched.

## Sixth Cause of Action:  Breach of Implied Warranty

180.   Plaintiff realleges and incorporates the allegations made elsewhere in the Complaint as if set forth in full herein.

181.   Kroger label representations also created statutory implied warranties under California law and other states' similar statutory warranties, and under common law implied warranty, that the Products were suitable for a particular purpose, specifically as naturally-flavored food products. Kroger breached these warranties as well.

182.   The Products' front labels misleadingly and by operation of federal law assure consumers that the Products are flavored only with natural ingredients comprising the characterizing flavors.

183.   As alleged in detail above, at the time of purchase Kroger had reason to know that Plaintiff, as well as all members of the Class, intended to use the Products specifically as naturally-flavored food products.

184.   This became part of the basis of the bargain between the parties.

185.   Based on that implied warranty, Kroger sold the goods to Plaintiff and other Class members who bought the goods from Defendant.

186.   At the time of purchase, Kroger knew or had reason to know that Plaintiff and the Class members were relying on Defendant's skill and judgment to select or furnish a product that was suitable for this particular purpose, and Plaintiff and the Class justifiably relied on Defendant's skill and judgment.

187.   Because of the multiple false and deceptive statements and misrepresentations alleged herein, the Products were not suitable for this purpose.

188.   Plaintiff purchased the Products believing they had the qualities Plaintiff sought, based on the deceptive advertising and labeling, but the Products were actually unsatisfactory to Plaintiff for the reasons described herein.

189.   The Products were not merchantable as they were not of the same quality as other products in the category generally acceptable in the trade.

190.   The Products would not pass without objection in the trade when packaged with the existing labels, because the Products were misbranded and illegal to sell in California under Cal. Comm. Code 2314(2)(a) and in other states with similar implied warranty statutes and common law.

191.   The Products also were not acceptable commercially and breached the statutory implied warranty because they were not adequately packaged and labeled as required. *See, e.g.,* Cal. Comm. Code 2314(2)(e).

192.   The Products also were not acceptable commercially and breached statutory implied warranties because they did not conform to the promises or affirmations of fact made on the container or label, *see, e.g.,* Cal. Comm. Code 2314(2)(f), and other grounds

CLASS ACTION COMPLAINT

as set forth in California Commercial Code section 2314(2) and other states' similar statutory and common law warranties.

193.   By offering the Products for sale and distributing the Products in commerce, Kroger also warranted that the Products were not misbranded and were legal to purchase. Because the Products were misbranded in several regards and were therefore illegal to sell or offer for sale in the United States, Kroger breached this warranty as well.

194.   As a result of this breach, Plaintiff and the other Class members did not receive goods as impliedly warranted by Defendant.

195.   Within a reasonable amount of time after the Plaintiff discovered that the Products breached these warranties, Plaintiff notified the Kroger of such breach.

196.   As a proximate result of this breach of warranty, Plaintiff and other Class members have been damaged in an amount to be determined at trial.

197.   As a result, Plaintiff and the Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Kroger was unjustly enriched.

### Seventh Cause of Action:  Common Law Fraud by Omission

198.   Plaintiff realleges and incorporates the allegations made elsewhere in the Complaint as if set forth in full herein.

199.   Defendant actively concealed material facts, in whole or in part, with the intent to induce Plaintiff and the members of the Class to purchase the Products.

200.   Specifically, Defendant actively concealed the truth about the Products by not disclosing the existence of the artificial flavoring ingredients on the front label of the Products as is required by federal and state law.

201.   Plaintiff and the Class were unaware of these omitted material facts and would not have purchased the Products, or would have paid less for the Products, if they had known of the concealed facts.

202.   Plaintiff and the Class suffered injuries that were proximately caused by Defendant's omissions and active concealments of material facts.

203.   Defendant's fraudulent omissions and concealments were a substantial factor in causing the harm suffered by Plaintiff and the Class members as they would not have purchased the products at all if all material facts were properly disclosed.

204.   As a result, Plaintiff, and the Class, are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Kroger was unjustly enriched by its fraudulent omissions.

## Eighth Cause of Action:  Negligent Misrepresentation

205.   Plaintiff realleges and incorporates the allegations made elsewhere in the Complaint as if set forth in full herein.

206.   Defendant had a duty under federal and state law to disclose the presence of artificial flavoring in the Products.

207.   Defendant negligently made misrepresentations of fact and omissions of material fact to Plaintiff and the other Class members about the Products.

208.   In making misrepresentations of fact and omissions of material fact to Plaintiff and the other Class members about the Products, Defendant failed to fulfill its common-law duties to disclose these material facts.

209.   Plaintiff and the other Class members, as a direct and proximate result of Defendant's breaches of its duties, reasonably relied upon such representations and omissions to their detriment.

210.   By reason of the foregoing, Plaintiff and the other Class members have suffered actual damages in an amount to be proved at trial, together with punitive damages.

## Ninth Cause of Action: Money Had and Received

211.   Plaintiff realleges and incorporates the allegations made elsewhere in the Complaint as if set forth in full herein.

212.   All of the Products are misbranded.

213.   State law, including California and all states with similar misbranding regulations, provide *inter alia* that food products are deemed to be misbranded if their labeling is false or misleading in any particular, and in particular if the food product

contains any artificial flavoring, coloring, or preservative, unless the product bears labeling stating that fact.

214.   Federal law similarly deems such goods misbranded.

215.   The manufacture, delivery, offer of delivery or sale of a misbranded food product is an illegal act in California and similar states. Such practices are prohibited by state law.

216.   The sale of a misbranded product violates the public policy of all such states.

217.   Kroger misbranded Products that were purchased by Plaintiff and the Class were illegal to sell under state law and therefore worthless as a matter of law.

218.   Plaintiff and members of the Class were unaware that the Kroger Products they purchased were misbranded and illegal to sell.

219.   Defendant received money from Plaintiff and the Class from the purchase of Kroger products.

220.   Defendant benefitted from receipt of this money.

221.   Under principles of equity and good conscience, Defendant should not be permitted to keep this money.

222.   Plaintiff and the members of the Class are thus entitled to recovery of the funds they expended to purchase the Defendant's misbranded Products.

## VIII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant as follows:

A.   An order confirming that this action is properly maintainable as a class action as defined above, appointing Plaintiff and his undersigned counsel to represent the Class and Sub-class, and requiring Defendant to bear the cost of class notice;

B.   An order declaring that the conduct complained of herein violates the Ohio Consumer Protection Act, Ohio Revised Code 1345.01 et seq;

C.   An order declaring that the conduct complained of herein violates

29

California's CLRA, UCL, and FAL;

D.    An order declaring that the conduct complained of herein breached express warranties, implied warranties, or both;

E.    An order requiring Defendant to disgorge any benefits received from Plaintiff and the Class, and any unjust enrichment realized as a result of the improper and misleading labeling, advertising, marketing, and sale of the Products;

F.    An order requiring Defendant to pay restitution and damages to Plaintiff and Class members so that they may be restored any money which was acquired by means of any unfair, deceptive, unconscionable or negligent acts;

G.    An award of punitive damages in an amount to be proven at trial;

H.    An order enjoining Defendant's deceptive and unfair practices;

I.    An order requiring Defendant to conduct corrective advertising;

J.    An award of pre-judgment and post-judgment interest;

K.    An award of attorney fees and costs; and

L.    Such other and further relief as this Court may deem just, equitable, or proper.

## IX.    **JURY DEMAND**

Plaintiff demands a trial by jury on all claims for damages. Plaintiff does not seek a jury trial for claims sounding in equity.

DATED: April 22, 2021                    Respectfully Submitted,


                                        /s/ *Ronald A. Marron*

                                        **THE LAW OFFICES OF
                                        RONALD A. MARRON**
                                        RONALD A. MARRON
                                        651 Arroyo Drive
                                        San Diego, California 92103
                                        Telephone:  (619) 696-9006

CLASS ACTION COMPLAINT

1
2

Facsimile:    (619) 564-6665
Email:  ron@consumersadvocates.com

3
4

**ELLIOT LAW OFFICE, PC**
DAVID ELLIOT (270381)
2028 Third Avenue

5
6

San Diego, CA 92101
Telephone:   (619) 468-4865
*Counsel for Plaintiff and the*

7

*Proposed Class*

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT