JACOB M. HARPER (State Bar No. 259463)
  jharper@dwt.com
JAMES H. MOON (State Bar No. 268215)
  jamesmoon@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Defendant
THE KROGER CO.

# IN THE UNITED STATES DISTRICT COURT

# THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GAMMINO,<br><br>                    Plaintiff,<br><br>          v.<br><br>THE KROGER CO.,<br><br>                    Defendant. | Case No. 5:21-cv-02933-BLF<br>Assigned to the Hon. Beth L. Freeman<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[***Request for Judicial Notice, Declaration of Jacob M. Harper, and Proposed Order Filed Concurrently***]<br><br>Date:          January 6, 2022<br>Time:         9:00 a.m.<br>Courtroom:  3 |

MOTION TO DISMISS
No. 5:21-cv-02933-BLF

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 6, 2022, at 9:00 a.m., in Courtroom 3 of the United States District Court, Northern District of California, San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, or as soon thereafter as the matter may be heard, Defendant The Kroger Co. will and hereby does move to dismiss with prejudice the Complaint filed by Plaintiff Michael Gammino on April 26, 2021, pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1) and 12(b)(6).

Gammino brings nine causes of action based on various states' statutory and common law based on the purported misbranding of nine separate Kroger sparkling-water beverages. Kroger moves to dismiss the Complaint in its entirety with prejudice on the following grounds:

1.  **Standing:**  Gammino lacks standing to bring his claims because he:  (a) has failed to allege any injury in reliance on any product he purchased, (b) cannot allege injury based on the various products he did not purchase, (c) is a California resident who cannot maintain claims under foreign law, and (d) cannot allege any imminent risk of prospective harm.

2.  **Preemption:**  Gammino's claims are impliedly and expressly preempted by federal food labeling laws promulgated by the U.S. Food & Drug Administration.

3.  **Equitable Claims:**  Gammino has failed to allege his entitlement to equitable, as opposed to legal, relief.

4.  **Other Deficiencies:**  Gammino's Complaint fails for additional claim-specific reasons, including his failure to allege (a) a violation of Ohio's Consumer Sales Practices Act, (b) any warranty claim, (c) any UCL claim, or (d) any claim for "money had and received."

5.  **Particularity:**  Gammino fails to allege his fraud-based claims with specificity under Rule 9(b).

1  This motion is based on this notice and motion; the attached memorandum; the

2  concurrently filed Request for Judicial Notice and Declaration of Jacob M. Harper; all pleadings,

3  records, and files in this action; and such evidence and argument as may be presented at or

4  before the hearing on this motion.

5

6  DATED: June 14, 2021                           Davis Wright Tremaine LLP

7                                                 By: /s/ Jacob M. Harper

8                                                      Jacob M. Harper

9                                                 *Attorneys for Defendant*
                                                   *The Kroger Company*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED .................................................... 1

III.  FACTUAL BACKGROUND ................................................................................. 2

    A.    Kroger Sells Fruit-Flavored Sparkling-Water Beverages. .......................... 2

    B.    Gammino Purchases Unspecified Kroger-Labeled Beverages. ................... 3

    C.    Gammino Alleges Technical Violations of Federal Regulations. ............... 3

IV.  GAMMINO'S ENTIRE COMPLAINT SHOULD BE DISMISSED ............................... 3

    A.    Gammino Lacks Standing to Bring These Claims. ..................................... 4

          1.    Gammino Does Not Plead Actual Reliance or Injury. ................... 4

          2.    Gammino Lacks Standing for Products He Did Not Purchase. ................. 7

          3.    Gammino Lacks Standing to Bring Foreign Law Claims. ........................ 8

          4.    Gammino Cannot Seek Injunctive Relief. ................................... 10

    B.    Gammino's State-Law Claims Are Preempted. ....................................... 12

          1.    All Gammino's State-Law Claims Are Impliedly Preempted. ................ 12

          2.    Gammino's Ingredient List Proposals Are Expressly Preempted. ............ 15

V.   GAMMINO'S CLAIMS FAIL FOR ADDITIONAL REASONS ................................... 16

    A.    Gammino's Equitable Claims Fail. ......................................................... 17

    B.    Additional Reasons Compel Dismissal. ................................................... 18

          1.    Gammino's Ohio Statutory Claim Is Not Adequately Alleged. ............... 18

          2.    The Warranty Claims Fail for Lack of Pre-Suit Notice. .......................... 19

          3.    Gammino's "Unfair" UCL Claim Fails. ................................... 21

          4.    Gammino's "Unlawful" UCL Claim Fails ................................. 22

          5.    Gammino's Money Had and Received Claim Fails. ................................ 22

          6.    Gammino Also Fails to Satisfy Rule 9(b). .............................................. 23

VI.  CONCLUSION ..................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alvarez v. Chevron Corp.*,
656 F.3d 925 (9th Cir. 2011) .......................................................................... 19, 20

*Arata v. Tonegato*,
152 Cal. App. 2d 837 (1957) ................................................................................ 20

*Arroyo v. Chattem, Inc.*,
926 F. Supp. 2d 1070 (N.D. Cal. 2012) ............................................................. 5, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 5, 20, 21

*Banks v. R.C. Bigelow, Inc.*,
2021 U.S. Dist. LEXIS 84385 (C.D. Cal. May 3, 2021) ....................................... 17

*Bardin v. Daimlerchrysler Corp.*,
136 Cal. App. 4th 1255 (2006) ............................................................................. 21

*Blum v. Yaretsky*,
457 U.S. 991 (1982) ............................................................................................... 8

*Borchenko v. L'Oreal USA, Inc.*,
389 F. Supp. 3d 769 (C.D. Cal. 2019) ...................................................... 12, 14, 15

*Brown v. 140 NM LLC*,
2019 U.S. Dist. LEXIS 2819 (N.D. Cal. Jan. 7, 2019) ......................................... 11

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ......................................................................................... 13, 14

*Bunce v. Ocwen Loan Servicing, LLC*,
2013 U.S. Dist. LEXIS 100111 (E.D. Cal. July 16, 2013) .................................... 22

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ............................................................................. 23

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,
169 Cal. App. 4th 116 (2008) ............................................................................... 20

*Carpenter v. Petsmart, Inc.*,
441 F. Supp. 3d 1028 (S.D. Cal. 2020) ................................................................... 9

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
  2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10, 2011) ........................................ 8

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.*,
  2016 U.S. Dist. LEXIS 123455 (N.D. Cal. Sept. 12, 2016) .................................... 6

*Corcoran v. CVS Health Corp.*,
  169 F. Supp. 3d 970 (N.D. Cal. 2016) ........................................................... 18, 19

*CTIA v. City of Berkeley, Cal.*,
  928 F.3d 832 (9th Cir. 2019) ........................................................................... 13

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ...................................................................... 10, 11

*Davis v. HSBC Bank*,
  691 F.3d 1152 (9th Cir. 2012) ......................................................................... 21

*Donohue v. Apple, Inc.*,
  871 F. Supp. 2d 913 (N.D. Cal. 2012) ............................................................. 20

*Drake v. Toyota Motor Corp.*,
  2021 U.S. Dist. LEXIS 98381 (C.D. Cal. May 17, 2021) .................................... 18

*Drum v. San Fernando Valley Bar Ass'n*,
  182 Cal. App. 4th 247 (2010) ...................................................................... 21, 22

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350 (2010) .......................................................................... 6

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ........................................................................... 20

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) ............................................................... 5

*Franklin v. Gwinnett Cty. Pub. Sch.*,
  503 U.S. 60 (1992) ......................................................................................... 17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
  528 U.S. 167 (2000) ......................................................................................... 9

*Gross v. Vilore Foods Co.*,
  2020 U.S. Dist. LEXIS 200913 (S.D. Cal. Oct. 28, 2020) ................................... 16

*Grossman v. Schell & Kampeter, Inc.*,
  2019 U.S. Dist. LEXIS 47407 (E.D. Cal. Mar. 20, 2019) .................................... 11

*Hairston v. S. Beach Beverage Co.*,
  2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012)................................................ 8

*Hendricks v. StarKist Co.*,
  30 F. Supp. 3d 917 (N.D. Cal. 2014) .......................................................................... 15

*Hilsley v. Gen. Mills, Inc.*,
  376 F. Supp. 3d 1043 (S.D. Cal. 2019) ....................................................................... 16

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ....................................................................................... 4

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) ......................................................................................................... 8

*In re Apple & AT&TM Antitrust Litig.*,
  596 F. Supp. 2d 1288 (N.D. Cal. 2008) ........................................................................ 9

*In re Apple In-App Purchase Litig.*,
  855 F. Supp. 2d 1030 (N.D. Cal. 2012) ...................................................................... 22

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*,
  2021 U.S. Dist. LEXIS 59875 (N.D. Cal. Mar. 29, 2021) ........................................ 18

*In re Capacitors Antitrust Litig.*,
  154 F. Supp. 3d 918 (N.D. Cal. 2015) .......................................................................... 9

*In re Ferrero Litig.*,
  794 F. Supp. 2d 1107 (S.D. Cal. 2011) ....................................................................... 15

*In re iPhone Application Litig.*,
  6 F. Supp. 3d 1004 (N.D. Cal. 2013) ................................................................... 4, 5, 6

*In re Medtronic, Inc.*,
  623 F.3d 1200 (8th Cir. 2010)......................................................................... 12, 13, 14

*In re Packaged Seafood Prods. Antitrust Litig.*,
  242 F. Supp. 3d 1033 (S.D. Cal. 2017) ......................................................................... 9

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
  880 F. Supp. 2d 801 (S.D. Ohio 2012) ....................................................................... 18

*Kane v. Chobani, Inc.*,
  2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sep. 19, 2013)........................................ 6

*King v. Bumble Trading, Inc.*,
  393 F. Supp. 3d 856 (N.D. Cal. 2019) ........................................................................ 22

*Lanovaz v. Twinings N. Am., Inc.*,
    726 F. App'x 590 (9th Cir. 2018).............................................................................................. 11, 12

*Leonhart v. Nature's Path Foods, Inc.*,
    2014 U.S. Dist. LEXIS 164425 (N.D. Cal. Nov. 21, 2014) ..................................................... 23

*Lewis v. Casey*,
    518 U.S. 343 (1996) ............................................................................................................... 8, 9

*Lincoln Nat'l Life Ins. Co. v. McClendon*,
    230 F. Supp. 3d 1180 (C.D. Cal. 2017).................................................................................... 23

*Lorentzen v. Kroger Co.*,
    2021 U.S. Dist. LEXIS 79931 (C.D. Cal. Apr. 2, 2021) ........................................................ 7, 8

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................................. 11

*McBride v. Boughton*,
    123 Cal. App. 4th 379 (2004) .................................................................................................. 22

*McCrary v. Elations Co., LLC*,
    2013 U.S. Dist. LEXIS 173592 (C.D. Cal. July 12, 2013) ....................................................... 5

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) ..................................................................................................... 7

*Michael v. Honest Co.*,
    2016 U.S. Dist. LEXIS 189116 (C.D. Cal. Dec. 6, 2016) ....................................................... 23

*Mlejnecky v. Olympus Imaging Am. Inc.*,
    2011 U.S. Dist. LEXIS 42333 (E.D. Cal. Apr. 19, 2011) ......................................................... 8

*Nat'l Family Farm Coal. v. United States EPA*,
    966 F.3d 893 (9th Cir. 2020)...................................................................................................... 7

*Pardini v. Unilever United States, Inc.*,
    961 F. Supp. 2d 1048 (N.D. Cal. 2013) ..................................................................................... 9

*Pastor v. All. Telcom*,
    2009 U.S. Dist. LEXIS 135664 (C.D. Cal. Nov. 17, 2009) ....................................................... 5

*Pearson v. Target Corp.*,
    2012 U.S. Dist. LEXIS 187208 (N.D. Ill. Nov. 9, 2012)........................................................... 8

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013)........................................................................................ 12, 13, 14

*Peviani v. Hostess Brands, Inc.*,
   750 F. Supp. 2d 1111 (C.D. Cal. 2010) ............................................................ 15

*Phillips v. Apple Inc.*,
   2016 U.S. Dist. LEXIS 53148 (N.D. Cal. Apr. 19, 2016) ...................................... 5

*Punian v. Gillette Co.*,
   2015 U.S. Dist. LEXIS 111208 (N.D. Cal. Aug. 20, 2015) .................................... 6

*Quynh Phan v. Sargento Foods, Inc.*,
   2021 U.S. Dist. LEXIS 103629 (N.D. Cal. June 2, 2021) .................................... 18

*Ramirez v. Medtronic Inc.*,
   961 F. Supp. 2d 977 (D. Ariz. 2013) ............................................................... 13

*Rodriguez v. Just Brands USA, Inc.*,
   2021 U.S. Dist. LEXIS 94413 (C.D. Cal. May 18, 2021) ...................................... 18

*Romero v. Flowers Bakeries, LLC*,
   2015 U.S. Dist. LEXIS 59498 (N.D. Cal. May 6, 2015) .......................................... 7

*Salam Razuki v. Nationstar Mortg., LLC*,
   2020 U.S. Dist. LEXIS 53992 (N.D. Cal. Mar. 26, 2020) ....................................... 9

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ................................................................... 4, 6

*Schmitt v. Younique LLC*,
   2017 U.S. Dist. LEXIS 223452 (C.D. Cal. Dec. 4, 2017) ..................................... 19

*Schroeder v. United States*,
   569 F.3d 956 (9th Cir. 2009) ..................................................................... 17

*Schultz v. Harney*,
   27 Cal. App. 4th 1611 (1994) ..................................................................... 23

*Sciacca v. Apple, Inc.*,
   362 F. Supp. 3d 787 (N.D. Cal. 2019) ............................................................ 11

*Shay v. Apple Inc.*,
   2021 U.S. Dist. LEXIS 84415 (S.D. Cal. May 3, 2021) ................................... 17, 18

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ..................................................................... 17

*Stearns v. Select Comfort Retail Corp.*,
   763 F. Supp. 2d 1128 (N.D. Cal. 2010) ......................................................... 19

*Thomas v. Costco Wholesale Corp.*,
  2014 U.S. Dist. LEXIS 46405 (N.D. Cal. Mar. 31, 2014) ......................................................... 4

*Thomas v. Mundell*,
  572 F.3d 756 (9th Cir. 2009) ...................................................................................................... 9

*Turek v. Gen. Mills, Inc.*,
  662 F.3d 423 (7th Cir. 2011) ...................................................................................................... 13

*United Food & Commer. Workers Local 1776 v. Teikoku Pharma USA, Inc.*,
  74 F. Supp. 3d 1052 (N.D. Cal. 2014) ........................................................................................ 9

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................................................... 24

*Volbers-Klarich v. Middletown Mgmt.*,
  929 N.E.2d 434 (Ohio 2010) ...................................................................................................... 19

*Walter v. Hughes Communs., Inc.*,
  682 F. Supp. 2d 1031 (N.D. Cal. 2010) ...................................................................................... 23

*Wilson v. Frito-Lay N. Am.*,
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) ........................................................................................ 4

*Yastrab v. Apple Inc.*,
  173 F. Supp. 3d 972 (N.D. Cal. 2016) .......................................................................................... 5

**Statutes**

21 U.S.C.
  §§ 301–399 .................................................................................................................................. 13
  § 331(b) ....................................................................................................................................... 13
  § 332 ............................................................................................................................................ 13
  § 333 ............................................................................................................................................ 13
  § 334 ............................................................................................................................................ 13
  § 337(a) ................................................................................................................................. 13, 15
  § 343–1(a)(2) & (3) ..................................................................................................................... 15
  § 343(i) ........................................................................................................................................ 15
  § 343, *et seq.* .............................................................................................................................. 13
  § 343(k) ....................................................................................................................................... 15
  § 372 ............................................................................................................................................ 13

Cal. Health & Saf. Code
  § 109875 *et seq.* ......................................................................................................................... 14
  § 110100 ...................................................................................................................................... 14

1

**Other Authorities**

2

21 C.F.R.
   § 10.25(a) .............................................................................................................. 13
   § 10.30 ................................................................................................................... 13
   § 100.1(c)(4) ......................................................................................................... 15
   § 101.4(a)(1) ......................................................................................................... 16
   § 101.22 ................................................................................................................. 21
   § 101.22(i) ............................................................................................................ 14
   § 101.22(i)(3) ....................................................................................................... 15
   § 101.22(i)(4) ....................................................................................................... 15
   § 101.22(c) ........................................................................................................... 15
   § 101.22(c) ........................................................................................................... 15
   § 102.5(a) ............................................................................................................. 14
   § 102.5(c) ............................................................................................................. 15
   § 184.1069(a) ....................................................................................................... 16

Fed. R. Civ. P.
   9(b) ............................................................................................................... 2, 5, 23
   11 ........................................................................................................................ 1, 4

U.S. Const.
   Article III ...................................................................................................... *passim*
   Article VI, cl. 2 .................................................................................................... 12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Michael Gammino asserts *nine* causes of action on behalf of a putative nationwide class based on various states' statutory and common law based on the supposed misbranding of at least *nine* sparkling-water beverage products sold by defendant The Kroger Company.  Gammino claims that these differently labeled products violate federal food labeling laws and state analogs because they include a certain type of "malic acid," which he believes should be labeled as an "artificial flavoring chemical."  (Compl., ECF No. 1 ¶¶ 10–16.)

The claims, however, are wholly manufactured.  Gammino has not pleaded any reliance on the purported mislabeling, nor can he:  He claims to have visited Kroger stores in a county that has no Kroger stores and sells no products, and he falsely states products lack disclaimers that they plainly display—both the focus of a Rule 11 motion concurrently served herewith.  Instead, Gammino was apparently recruited to this cause by his attorney, who is improperly using this and a series of other putative class actions to use state consumer protection laws to change federal regulations regarding the definition of natural and artificial flavors as they pertain to "l-malic acid" and "dl-malic acid."

With a no-injury plaintiff, no-basis allegations, and a plainly improper attempt to use state law to alter preemptive federal food regulations (among numerous other failures), this Complaint suffers multiple and incurable pleading deficiencies.  As such, Kroger respectfully requests the Court dismiss this action if Mr. Gammino does not voluntarily withdraw this erroneous complaint on his own accord.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.   **Standing:**  Whether Gammino lacks standing to bring his claims because he: (a) has failed to allege any injury based on the product he purchased, (b) cannot allege injury based on the various products he did not purchase, (c) is a California resident who cannot maintain claims under foreign law, and (d) cannot allege any imminent risk of prospective harm.

2.   **Preemption:**  Whether Gammino's claims are preempted by federal food labeling laws promulgated by the U.S. Food & Drug Administration.

3.   **Equitable Claims:**  Whether Gammino has failed to allege his entitlement to equitable, as opposed to legal, relief.

4.   **Other Deficiencies:**  Whether Gammino's nine causes of action fail for additional claim-specific reasons.

5.   **Particularity:**  Whether Gammino fails to allege his fraud-based claims with specificity under Rule 9(b).

## III.   FACTUAL BACKGROUND

### A.   Kroger Sells Fruit-Flavored Sparkling-Water Beverages.

Kroger sells a wide variety of Kroger-branded food and beverage products.  (Compl. ¶ 11.)  Among these products is a line of Kroger-labeled sparkling-water beverages.  (*Id.* ¶ 12.) These products do not purport to be "all natural," and Kroger does not label them as such.  The actual labels for many products Plaintiff claims to have bought have front-of-pack language stating "Naturally Flavored" (*id.* ¶ 46), and the front-of-pack language for the "Black Cherry" product Plaintiff claims to have bought states "Naturally & Artificially Flavored." (Request for Judicial Notice (RJN), Ex. A; *see also* Decl. of Jacob M. Harper (Harper Decl.) ¶ 2.)



Kroger labels its sparking-water beverages in accordance with the ingredients contained within each specific flavor of the beverages.  Gammino (falsely) alleges that all the products, including the "Black Cherry" flavor of the Kroger-labeled sparkling-water beverage was labeled as only "naturally flavored."  (Compl. ¶¶ 12, 13, 37.)

**B.  Gammino Purchases Unspecified Kroger-Labeled Beverages.**

Without detail, Gammino makes the conclusory allegation that he "purchased the Products multiple times annually since 2015 at various locations in California, most recently at Food4Less and Lucky's Supermarkets in and around Santa Cruz, California" at stores in Santa Cruz County and Monterey County (Compl. ¶ 91), even though Kroger does not own or operate stores in Santa Cruz County.  He does not identify the particular products he purchased, how many, or when.  Gammino vaguely alleges that his "most recent purchase was in February 2021."  (*Id.* ¶ 93.)  Nowhere does Gammino allege that he even read the label or the ingredients of the Products.  Nor does he allege what variety of Kroger-labeled sparkling-water beverage he purchased.  Nor does he claim that he complained to Kroger about these products prior to filing suit.  (*See id.* ¶ 195.)

**C.  Gammino Alleges Technical Violations of Federal Regulations.**

Gammino claims that he "reasonably assumed the Products to be free of artificial flavorings based on the Products' labels[.]"  (Compl. ¶ 98.)  However, as shown in the label above, the "Black Cherry" flavor (among others) plainly states that it is "Naturally & Artificially Flavored."  The Complaint specifically mentions the "Black Cherry" flavor on multiple occasions, implying that Gammino may have purchased this product.  (*Id.* ¶¶ 12, 13.)  Gammino fails to reconcile how the absence or existence of an "artificially flavored" label contributed to his decision to buy the product.

**IV.  GAMMINO'S ENTIRE COMPLAINT SHOULD BE DISMISSED**

Before the Court reaches any of Gammino's many claim-specific failures, it should dismiss these claims for two broad-based and irreparable failures:  (A) Gammino lacks standing to bring his claims, and (B) the Federal Food, Drug, and Cosmetic Act (FDCA) preempts them.

### A.    Gammino Lacks Standing to Bring These Claims.

For starters, Gammino lacks standing to bring these claims—the inevitable result of evidently never actually purchasing the various products he attacks, as detailed in the concurrently served Rule 11 motion.  In particular, his Complaint suffers from at least four threshold standing defects:  (1) he does not and cannot allege actual reliance or injury; (2) he cannot extend standing to products to "substantially similar" products he did not purchase; (3) he cannot bring extraterritorial claims as a class representative for alleged violation of Ohio or any other state's laws; and (4) he cannot raise claims for injunctive relief.

### 1.    Gammino Does Not Plead Actual Reliance or Injury.

*First*, Gammino lacks standing to pursue his claims under California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumer Legal Remedies Act (CLRA) because he has failed to allege that he actually relied on any purported deceptive advertising on any of Kroger's sparkling-beverage products that he may have purchased.

"To satisfy Article III standing, plaintiffs must allege: (1) a concrete, particularized, actual or imminent injury-in-fact; (2) that the injury is traceable to the defendant's action; and (3) that a favorable ruling could redress the injury."  *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1140 (N.D. Cal. 2013).  California's consumer protection laws "incorporate the Article III standing requirements, but additionally require that the plaintiff plead an economic injury."  *Thomas v. Costco Wholesale Corp.*, 2014 U.S. Dist. LEXIS 46405, at *12 (N.D. Cal. Mar. 31, 2014).  Standing is thus limited to persons who "ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition."  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013).

"Adequately establishing injury," however, "is only part of the battle."  *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013).  For an injury to satisfy this standing requirement, a plaintiff is required to allege "actual reliance on the allegedly deceptive or misleading statements," and that "the misrepresentation was an immediate cause of [the] injury-producing conduct."  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012).  In other words, "[i]n order to assert a claim under the UCL, FAL, or CLRA, the plaintiff

1   must demonstrate actual reliance." *McCrary v. Elations Co., LLC*, 2013 U.S. Dist. LEXIS

2   173592, at *19 (C.D. Cal. July 12, 2013).

3        "Actual reliance," in turn, requires that "Plaintiffs must have seen the misrepresentations

4   and taken some action based on what they saw—that is, Plaintiffs must have actually relied on

5   the misrepresentations to have been harmed by them." *In re iPhone Application Litig.*, 6 F.

6   Supp. 3d 1004, 1015 (N.D. Cal. 2013); *accord Phillips v. Apple Inc.*, 2016 U.S. Dist. LEXIS

7   53148, at *18 (N.D. Cal. Apr. 19, 2016); *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 980 (N.D.

8   Cal. 2016).  Absent such allegations, misrepresentation claims under the UCL, FAL, and CLRA

9   fail as a matter of law.  *See Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1080 (N.D. Cal.

10  2012).  And Gammino cannot simply state conclusions that he suffered injuries.  Instead,

11  because Gammino alleges "the Product labels are fraudulent" (Compl. ¶ 18), he must plead with

12  particularity under the heightened pleading standard of Rule 9(b).  *See Kearns*, 567 F.3d 1120,

13  1127 (9th Cir. 2009).

14       The Complaint uses insufficient legal conclusions that Gammino "relied" on Kroger's

15  "omission of the fact that the Products contained artificial flavorings" and "assumed the Products

16  to be free of artificial flavorings based on the Products' labels" (Compl. ¶¶ 95, 98) and is devoid

17  of factual allegations supporting a conclusion of reliance.  *See Pastor v. All. Telcom*, 2009 U.S.

18  Dist. LEXIS 135664, at *8 (C.D. Cal. Nov. 17, 2009) (rejecting conclusory allegations that

19  plaintiffs "would not have purchased" products absent misrepresentation because it was not

20  "accompanied by any additional 'factual allegations' as contemplated by *Iqbal*"); *Elias v.

21  Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 855 n.3 (N.D. Cal. 2012) ("his only statement of

22  reliance on Defendants' conduct is entirely conclusory in nature—it does not allege with any

23  particularity *how* Plaintiff relied on Defendants' representations, nor does it allege *why* Plaintiff

24  would have acted differently without those representations").

25       Beyond impermissibly vague allegation that he "relied upon" the label at some

26  unidentified point (Compl. ¶ 12), there is no adequate allegation about *how* Gammino "relied" on

27  the allegedly "deceptive" label, actually reading and understanding the representation, or how it

28  affected his decision to purchase the Product.  *See Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d

1070, 1080 (N.D. Cal. 2012) ("Plaintiff quotes from the packaging and describes some of the circumstances surrounding her purchase, the [complaint] does not allege that she read the packaging prior to purchasing the product in Feb. 2011"); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1355, 1362–63 (2010) (no standing when plaintiff failed to allege that he read the alleged misrepresentation, even though plaintiff signed the agreement containing the misrepresentation); *Kane v. Chobani, Inc.*, 2013 U.S. Dist. LEXIS 134385, at *25 (N.D. Cal. Sep. 19, 2013) ("Plaintiffs' allegations that they read the label, were aware that the Yogurts contained ECJ, and nevertheless concluded that the Yogurts contained 'only natural sugars from milk and fruit and did not contain added sugars or syrups' is simply not plausible."); *In re iPhone App'n Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013) ("Plaintiffs must have seen the misrepresentations and taken some action based on what they saw—that is, Plaintiffs must have actually relied on the misrepresentations to have been harmed by them.").

Gammino cannot simply say he "would not have purchased the Products in the absence of Defendant's misrepresentations and omissions[,]" rather, Plaintiff must allege he read the package and relied on Kroger's alleged "omission" when purchasing the Product.  *See Arroyo*, 926 F. Supp 2d at 1080; *Sateriale*, 697 F.3d at 793.   Gammino's reliance on Kroger's alleged omission fails because he did not state that that he read or even saw any of the labels on the products before purchasing it.  *See Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, 2016 U.S. Dist. LEXIS 123455, at *31 (N.D. Cal. Sept. 12, 2016) (finding the plaintiff failed to plead actual reliance on an omission when "the complaint does not allege that Plaintiff relied upon, or even saw, any representations on Ultra Slim wall mount packaging").  Rather, Gammino must state that he read the label, believed the representations or lack thereof, and would not have purchased the product had the packaging not been allegedly deceptive.  *Id* at *32 (quoting *Punian v. Gillette Co.*, 2015 U.S. Dist. LEXIS 111208, at *8 (N.D. Cal. Aug. 20, 2015)).

The Complaint thus fails to allege Gammino's "actual reliance" on the Product's "omission of the fact that the Products contained artificial flavorings."  (Compl. ¶ 95.)

## 2.   Gammino Lacks Standing for Products He Did Not Purchase.

*Second*, even if Gammino sufficiently alleged reliance as a general matter, Gammino lacks standing to assert claims as to products he did not actually purchase.

Gammino does not actually state what product he purchased.  While he lists a smattering of different product flavors, he merely describes them in-lump throughout the complaint as "Products" and fails to specify any detail about any particular product, all of which admittedly nonetheless contain different labels.  (Compl. ¶¶ 12, 13, 37.)  Gammino alleges that he "purchased selected Products multiple times" but fails to specify which of the Products' flavors were actually purchased.  (*Id.* ¶ 20.)  He lists nine separate products in his Complaint—including those that bear strikingly different labeling regarding artificial flavoring.  (*Id.* ¶ 13.)

Because of this failure, Gammino leaves Kroger (and the Court) unable to discern whether Gammino even actually purchased each of these products, much less determine what specific representations he perceived on each purchased product, what he interpreted those representations to mean, and how those representations were false.  As this Court observed in dismissing another mislabeling action for nearly identical pleading failures, "Plaintiff cannot simply identify a list of products, allege a slew of problems with Defendant's labeling of those products, and then ask Defendant and the Court to mix and match.  It is not the task of the Court or of Defendant to diagram the intersection between the challenged products and the mislabeling allegations." *Romero v. Flowers Bakeries, LLC*, 2015 U.S. Dist. LEXIS 59498, at *12 (N.D. Cal. May 6, 2015) (citing *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996)).

As courts have observed, this attempt to raise claims for products the plaintiff never purchased represents not only a fatal pleading defect, but a fundamental problem "inconsistent with the basic concept of standing" as articulated by the Supreme Court.  *See Lorentzen v. Kroger Co.*, 2021 U.S. Dist. LEXIS 79931, at *9 (C.D. Cal. Apr. 2, 2021) (dismissing for lack of standing all mislabeling claims with respect to products that plaintiff did not buy).  This is because "Article III of the United States Constitution confines federal courts to hearing only '[c]ases' and '[c]ontroversies.'" *Nat'l Family Farm Coal. v. United States EPA*, 966 F.3d 893, 908 (9th Cir. 2020).  Federal courts are, therefore, not the forum for adjudicating general

grievances untethered to a plaintiff's specific injuries.  *See Hollingsworth v. Perry,* 570 U.S. 693, 715 (2013) ("[T]he fact that a State thinks a private party should have standing to seek relief for a generalized grievance cannot override our settled law to the contrary.").

Article III standing also cannot be "dispensed in gross" in putative class actions based on potential injuries to others.  *See Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).  As the Supreme Court has observed in *Blum v. Yaretsky,* 457 U.S. 991 (1982), it is "not enough that the conduct of which the plaintiff complains will injure *someone[,]*" similarly, "[n]or does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." *Id.* at 999.  *Blum* makes clear Gammino lacks standing to bring claims for products he did not purchase, even if those other products are substantially similar or "virtually identical" to those that he did purchase.

As another district court succinctly put it, "how could [a plaintiff] possibly have been injured by representations made on a product [the plaintiff] did not buy?"  *Pearson v. Target Corp.,* 2012 U.S. Dist. LEXIS 187208, at *4 (N.D. Ill. Nov. 9, 2012).  For this reason, numerous district courts have dismissed claims on both standing and pleadings grounds for lack of sufficient allegations of purchase.  *See, e.g.*, *Lorentzen*, 2021 U.S. Dist. LEXIS 79931, at *9 (C.D. Cal. Apr. 2, 2021); *Hairston v. S. Beach Beverage Co.,* 2012 U.S. Dist. LEXIS 74279, at *16 n.5 (C.D. Cal. May 18, 2012) (same); *Mlejnecky v. Olympus Imaging Am. Inc.,* 2011 U.S. Dist. LEXIS 42333, at *21 (E.D. Cal. Apr. 19, 2011) (dismissing claims based on products not purchased for failure to allege economic injury under the UCL); *Carrea v. Dreyer's Grand Ice Cream, Inc.,* 2011 U.S. Dist. LEXIS 6371, at *19 (N.D. Cal. Jan. 10, 2011) (dismissing claims based on products other than those purchased by the plaintiff).

Because Gammino lacks standing to bring claims on Kroger-labeled sparkling-water beverages he did not purchase, the Court should dismiss his claims based on those products.

### 3.    Gammino Lacks Standing to Bring Foreign Law Claims.

*Third*, on a related note, Gammino's first cause of action is purportedly brought for violation of the Ohio Consumer Sales Practices Act on behalf of "All Ohio- and Similar-States'

Plaintiffs."  (Compl. at p. 17:20–23.)  In addition to having no standing to sue for products he never purchased, Gammino's claims should be dismissed with prejudice based on his lack of standing to bring suit based on foreign law.

A plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000).  "[W]hen measuring standing claim by claim, a named plaintiff must possess the requisite standing; it is not sufficient that a putative class member may have standing to press one of the claims."  *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 925 (N.D. Cal. 2015) (citing *Lewis v. Casey*, 518 U.S. 343, 357–58 (1996)); *accord Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (a "threshold question in every federal case is, therefore, whether at least one plaintiff has standing" for each claim or form of relief sought).

"Consequently, at least one named plaintiff must have Article III standing to bring a claim under the laws of each state included in the alleged multi-state class."  *Salam Razuki v. Nationstar Mortg., LLC*, 2020 U.S. Dist. LEXIS 53992, at *7 (N.D. Cal. Mar. 26, 2020); *see also In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1095 (S.D. Cal. 2017) ("The overwhelming majority of courts have held that Article III standing for state law claims is necessarily lacking when no plaintiff is alleged to have purchased a product within the relevant state. . . .  This is because injury in fact is not established."); *United Food & Commer. Workers Local 1776 v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1078 (N.D. Cal. 2014) (collecting cases in which courts held that "plaintiffs must allege that they were injured in a particular state in order to bring claims under that state's laws"); *Carpenter v. Petsmart, Inc.*, 441 F. Supp. 3d 1028, 1039 (S.D. Cal. 2020) (accord).

This black-letter law applies equally to nationwide class action cases purportedly involving consumer protection laws of various states.  *See, e.g.*, *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013) (finding a plaintiff that has not alleged to purchasing products outside of California "does not have standing to assert a claim under the consumer protection laws of the other states," and such a defect must be determined prior to class certification) (citation omitted); *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d

1288, 1309 (N.D. Cal. 2008) (granting motion to dismiss for allegations of violations in states where the named plaintiffs do not reside); *Kang v. P.F. Chang's China Bistro, Inc.*, 2020 U.S. Dist. LEXIS 75744, at *9 (C.D. Cal. Jan. 9, 2020) (accord); *Morales v. Unilever U.S., Inc.*, 2014 U.S. Dist. LEXIS 49336, at *4 (E.D. Cal. Apr. 9, 2014) (holding that because the named plaintiffs were only residents of two states and did not purchase defendant's products in any state but their own they did "not have standing to assert a claim under the consumer protection laws of the other states named in the Complaint").

The lone plaintiff in this action is Gammino, a California resident who allegedly purchased Kroger's product (if anywhere) in California.  (Compl. ¶¶ 26, 90–91.)  He therefore has no standing to bring any claim under Ohio or any other states' consumer protection statutes. The Court should dismiss Gammino's claim under Ohio's Consumer Sales Practices Act with prejudice.

### 4.    Gammino Cannot Seek Injunctive Relief.

*Last*, Gammino lacks standing to seek prospective injunctive relief because he has failed to allege any concrete threat of future injury to remedy.

As explained above, "[a] plaintiff must demonstrate constitutional standing separately for each form of relief requested."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  "For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'"  *Id.*  "In other words, the 'threatened injury must be certainly impending to constitute injury in fact' and 'allegations of possible future injury are not sufficient.'"  *Id.*

The Ninth Circuit's recent analysis in *Davidson* controls the relevant analysis.  There, the court decided an intra-circuit split in cases such as this where a plaintiff seeks injunctive relief under California's consumer protection statutes despite alleging full awareness of the purportedly "deceptive nature of an advertisement," likely precludes her from being "misled into buying the relevant product in the future."  *Id.* at 968.  The Ninth Circuit held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling"

1    if she makes adequate factual allegations that she "may suffer an 'actual and imminent, not

2    conjectural or hypothetical' threat of future harm."  *Id.* at 969–70.

3         In the action before the court, the Ninth Circuit found convincing the plaintiff's

4    allegations that "she desires to purchase Kimberly-Clark's flushable wipes" in the future.  *Id.* at

5    971.  In contrast, Gammino does not allege he desires or intends to purchase the Product again in

6    the future.  He instead alleges in an equivocal and speculative manner that he "will purchase the

7    Products again when he can do so with the assurance that the Products' labels, which indicate

8    that the Products are solely naturally-flavored, are lawful and consistent with the Products'

9    ingredients."  (Compl. ¶ 103.)

10         In cases that have followed since *Davidson*, district courts have repeatedly rejected

11   allegations indistinguishable from those of Gammino based on the *Davidson* standard.  *See*

12   *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) ("Though Lanovaz

13   argues that her suit should survive summary judgment because she stated in an interrogatory

14   response that she would 'consider buying' Twinings products in the future, we disagree.");

15   *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 803 (N.D. Cal. 2019) ("In *Davidson*, there were

16   allegations that the plaintiff was going to purchase the product again had it not been for the

17   defendant's purported false advertising.  Here, there are no such allegations.  Plaintiff merely

18   *theorizes* that he *might* repair the Watch in the future, which *may* give rise to the alleged

19   defect."); *Grossman v. Schell & Kampeter, Inc.*, 2019 U.S. Dist. LEXIS 47407, at *20 (E.D. Cal.

20   Mar. 20, 2019) ("Plaintiffs have failed to sufficiently state a claim for injunctive relief because

21   the allegations do not include that they want to purchase the product in the future."); *Brown v.*

22   *140 NM LLC*, 2019 U.S. Dist. LEXIS 2819, at *8 (N.D. Cal. Jan. 7, 2019) (no standing because

23   plaintiff "does not allege that he intends to dine at any [of] Defendants' restaurants in the

24   immediate future").

25         As the Ninth Circuit has explained, a "'profession of an inten[t] . . . is simply not enough"

26   to satisfy Article III."  *Lanovaz*, 726 F. App'x at 591 (citing *Lujan v. Defs. Of Wildlife*, 504 U.S.

27   555, 564 (1992)).  "A 'some day' intention[ ]—without any description of concrete plans, or

28   indeed even any specification of *when* the some day will be—do[es] not support a finding of the

'actual or imminent' injury that Article III requires." *Id.* Therefore, as a matter of law, the plaintiff's "statement that she would 'consider buying' Twinings products does not satisfy this standard." *Id.*

Allowing prospective injunctive relief based on Gammino's *potential* to purchase again— *i.e.*, he will purchase "when he can do so with assurances that Products' labels indicate that the Products are solely naturally-flavored" (Compl. ¶ 103)—is exactly the type of "some day" conjectural or hypothetical threat of future harm disallowed under the law. Gammino fails to allege when, where, and what flavor he intends to purchase again. *Lanovaz*, 726 F. App'x at 591. Without specific allegations as to when and how he intends to purchase, Gammino does not have standing for injunctive relief. Gammino therefore lacks standing to pursue injunctive relief.

**B.      Gammino's State-Law Claims Are Preempted.**

Gammino's claims—all of which stem from various states' laws—are also impliedly and expressly preempted by federal laws and regulations governing malic acid.

### 1.      All Gammino's State-Law Claims Are Impliedly Preempted.

Gammino's state-law claims are impliedly preempted because they are based on a violation of federal law, which the FDA has exclusive jurisdiction to enforce, a conclusion this Court must reach even if Gammino attempts to cite to the California Sherman Law as the nominal basis for his claims. *See, e.g.*, *Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 774 (C.D. Cal. 2019) (granting motion to dismiss labeling and ingredient claim under FDCA preemption despite allegations of violations of Sherman Law) (applying *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (state law claims will be impliedly preempted if the plaintiff is suing "'*because* the conduct violates the FDCA'") (quoting *In re Medtronic, Inc.*, 623 F.3d 1200, 1204 (8th Cir. 2010)).

Under the Supremacy Clause of the United States Constitution, Congress has the power to preempt state law. U.S. Const. art. VI, cl. 2 (stating that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). Federal preemption of state law occurs in three scenarios: "(1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts

1    with federal law; or (3) federal law occupies a legislative field to such an extent that it is

2    reasonable to conclude that Congress left no room for state regulation in that field." *CTIA v. City*

3    *of Berkeley, Cal.*, 928 F.3d 832, 849 (9th Cir. 2019).

4         The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301–399, the

5    Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 343, *et seq*., and their

6    implementing regulations detail the federal provisions prohibiting "misbranding" of food

7    (21 U.S.C. § 331(b)) and grant the FDA exclusive authority to ensure that "foods are . . .

8    properly labeled" on behalf of all consumers, *id.* § 393(b)(2)(A).  *See* H.R. Rep. No. 101–538, at

9    7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337 (noting the NLEA, amending the FDCA,

10   was intended to "clarify and to strengthen [the FDA's] legal authority to require nutrition

11   labeling on foods.").  These statutes ensure that uniform requirements will not devolve into a

12   state-by-state patchwork of labeling schemes that would impede federal objectives.  *See Turek v.*

13   *Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) ("Congress would not want to allow states to

14   impose disclosure requirements of their own on packaged food products, most of which are sold

15   nationwide.").

16        The FDA is solely responsible for "investigating potential violations of the FDCA, and

17   the Act provides the agency with a range of enforcement mechanisms, such as injunction

18   proceedings, civil and criminal penalties, and seizure."  *Id.* (citing 21 U.S.C. §§ 332–34, 372).

19   While private citizens may petition the FDA to take administrative action, 21 C.F.R. §§ 10.25(a)

20   and 10.30, private enforcement of the FDCA is barred by section 337(a), which provides that "all

21   such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in

22   the name of the United States."  21 U.S.C. § 337(a).

23        Thus, as the Ninth Circuit has held, pursuant to section 337(a), state law claims will be

24   impliedly preempted if the plaintiff is suing "*because* the conduct violates the FDCA."  *Perez v.*

25   *Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (quoting *In re Medtronic, Inc.*, 623 F.3d 1200,

26   1204 (8th Cir. 2010)); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001)

27   (holding fraud claims were preempted because they "exist[ed] solely by virtue of the FDCA

28   disclosure requirements."); *Ramirez v. Medtronic Inc.*, 961 F. Supp. 2d 977, 987 (D. Ariz. 2013)

1   ("[S]tate law claims that seek only to enforce federal law, nothing more, are impliedly

2   preempted.").

3          "The Eighth Circuit has aptly described the 'narrow gap' through which a state-law claim

4   must fit to escape preemption by the FDCA: 'The plaintiff must be suing for conduct that

5   violates the FDCA (or else his claim is expressly preempted . . . ), but the plaintiff must not be

6   suing because the conduct violates the FDCA (such a claim would be impliedly preempted under

7   *Buckman*).'"  *Perez*, 711 F.3d at 1120 (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prods.*

8   *Liab. Litig.*, 623 F.3d 1200, 1205 (8th Cir. 2010)).

9          Gammino may argue that his claims survive preemption because they are not based on

10  the FDCA but on California's Sherman Food Drug & Cosmetic Law ("Sherman Law").  (Compl.

11  ¶ 35 n.1 (citing Cal. Health & Saf. Code § 109875 *et seq.*).)  The Complaint suggests that

12  Gammino is purporting to bring suit for violation of the Sherman Law—not the FDCA—because

13  the Sherman law "incorporates into California law all regulations enacted pursuant to the

14  [FDCA]."  (Compl. ¶ 35 n.1.)  This argument fails.

15         As explained recently by another district court applying Ninth Circuit precedent, a

16  plaintiff cannot enforce the FDCA merely because the Sherman Law adopts the FDCA's

17  restrictions and requirements.  *See Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 774

18  (C.D. Cal. 2019).  Because the "Sherman Law cited by Plaintiff each rely on and essentially

19  mirror parallel provisions of the FDCA" a plaintiff seeking to apply the Sherman Law is doing

20  nothing more than seeking to "enforce the FDCA."  *Id.* at 773.

21         Here, Gammino's only references to and reliance upon the Sherman Law is based on its

22  adoption of FDA regulations.  (Compl. ¶ 35 n.1 (citing Cal. Health & Saf. Code § 110100 ("All

23  food labeling regulations and any amendments to those regulations adopted pursuant to the

24  federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food

25  labeling regulations of this state.")); *id.* ¶¶ 63 ("Sherman Law, adopt[s] FDA regulations"); *id.*

26  ¶ 137 ("FDA regulations adopted into California's Sherman Law").)  In contrast, the Complaint

27  includes repeated references to specific FDA regulations that Kroger purportedly violated.  (*See,*

28  *e.g.*, Compl. ¶ 62 (citing FDA flavor regulation, 21 C.F.R. § 102.5(a)); *id.* ¶ 64 (citing 21 C.F.R.

§ 101.22(i)); *id.* ¶ 66 (citing 21 C.F.R. §§ 101.22(i)(3), (4)); *id.* ¶ 67 (citing 21 C.F.R.

§ 101.22(c)); *id.* ¶¶ 68–69 (citing 21 C.F.R. § 102.5(c)); *id.* ¶¶ 154–55 (citing 21 C.F.R.

§ 101.22(c)).)

As in *Borchenko*, Gammino's state law claims are thus "impliedly preempted by federal

law because it exists solely by virtue of the FDCA and law which references the FDCA, seeks to

enforce provisions of the FDCA, and conflicts with the FDCA discretionary enforcement

process." *Id.* at 774. The salutary references to the Sherman Law does not change the result.

Section 337(a) bars Gammino's attempt to privately enforce the requirements of the FDCA

under the guise of state law.

### 2. Gammino's Ingredient List Proposals Are Expressly Preempted.

To the extent Gammino attempts to change nutrition label requirements, Gammino's

claims are also expressly preempted because they exceed the express federal requirements.

To ensure uniform labeling nationally, the NLEA contains an express preemption clause,

providing that "no State . . . may directly or indirectly establish . . . any requirement . . . made in

the labeling of food of the type required by," among others, 21 U.S.C. § 343(i) and § 343(k),

"that is not identical to the requirements of such section." 21 U.S.C. § 343–1(a)(2) & (3).

A requirement is "not identical" if it "directly or indirectly imposes obligations or contains

provisions concerning the composition or labeling of food, or concerning a food container, that:

(i) Are not imposed by or contained in the applicable provision [or regulation]; or (ii) Differ from

those specifically imposed by or contained in the applicable provision [or regulation]."

21 C.F.R. § 100.1(c)(4).

As such, state laws are expressly "preempted if they seek to impose requirements that

contravene the requirements set forth by federal law." *In re Ferrero Litig.*, 794 F. Supp. 2d

1107, 1113 (S.D. Cal. 2011) (interpreting 21 C.F.R. § 100.1(c)(4)) (citations omitted); *see also*

*Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 926 (N.D. Cal. 2014) ("[S]tate law or state law

claims seeking to establish standards that differ from the FDCA's standards are expressly

preempted."); *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1119 (C.D. Cal. 2010)

1   (state law claims fail where they "impose a state-law obligation . . . not required by federal

2   law").

3            Here, Gammino expressly states that his claims are premised on the theory that "the

4   Product ingredient list violates Federal and state law because it misleadingly identifies the malic

5   acid constituent only as a generic 'malic acid' instead of using the correct, specific, non-generic

6   chemical name of the ingredient."  (Compl. ¶ 36.)  His claims are expressly preempted because

7   he is attempting to use state law to impose new requirements not identical with federal law.  In

8   particular, federal regulations govern the listing of ingredients on food labels.

9            According to those regulations, "[i]ngredients required to be declared on the label or

10   labeling of a food . . . shall be listed by common or usual name."  21 C.F.R. § 101.4(a)(1).  For

11   malic acid, FDA regulations state that "[m]alic acid . . . is the common name."  21 C.F.R.

12   § 184.1069(a).  This includes both l-malic acid and dl-malic acid.  *Id.*

13            Based on these plain regulations, courts have observed that "'malic acid' is the common

14   name for the forms listed in parentheses, including d-l malic acid."  *Hilsley v. Gen. Mills, Inc.*,

15   376 F. Supp. 3d 1043, 1049 (S.D. Cal. 2019).  "Accordingly, the FDA regulations do not require

16   that malic acid be listed in the ingredients by a more specific name."  *Id.*  "To the extent

17   Plaintiff's claims are based on the contrary proposition, they are preempted."  *Id.*  This same

18   conclusion has been reached repeatedly by district courts.  *See Gross v. Vilore Foods Co.*, 2020

19   U.S. Dist. LEXIS 200913, at *8 (S.D. Cal. Oct. 28, 2020) (collecting cases).

20            There is no difference in this case that can save Gammino's theory from express

21   preemption based on federal law governing the labeling of malic acid.  Because Gammino is

22   attempting to use state law to force Kroger to apply standards different from those enacted under

23   the FDCA, his claims are preempted.

24   **V.     GAMMINO'S CLAIMS FAIL FOR ADDITIONAL REASONS**

25            Even if the Court found Gammino's claims survived the numerous standing and

26   preemption challenges above, his causes of action fail for claim-specific reasons.

27

28

1      **A.      Gammino's Equitable Claims Fail.**

2          As an initial matter, Gammino brings a slew of equitable claims and requests for relief

3  under the UCL, FAL, CLRA, and for "money had and received."  (Compl. ¶¶ 127–68, 211–22.)

4  These equitable claims and requests all fail under controlling Ninth Circuit law.

5          In this Court, "equitable remedies are subject to traditional equitable principles

6  unaffected by state law."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir.

7  2020).  As such, "a federal court *must* apply traditional equitable principles before awarding

8  restitution under the UCL and CLRA."  *Id.*  In particular, well established equitable principles

9  require a plaintiff to "plead that legal remedies are inadequate" prior to seeking equitable relief.

10  *Id.* at 844 (citing *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75–76 (1992) (holding that

11  when "remedies are equitable in nature . . . it is axiomatic that a court should determine the

12  adequacy of a remedy in law before resorting to equitable relief"); *Schroeder v. United States*,

13  569 F.3d 956, 963 (9th Cir. 2009) ("[E]quitable relief is not appropriate where an adequate

14  remedy exists at law.")).  This *Sonner* rule applies to all forms of equitable relief, including

15  injunctive relief.  *See Shay v. Apple Inc.*, 2021 U.S. Dist. LEXIS 84415, at *7 (S.D. Cal. May 3,

16  2021) (collecting cases).

17          The Complaint does not include any allegation of any sort suggesting the inadequacies of

18  the legal remedies he is seeking in his action.  (*See* Compl. ¶¶ 127–68, 211–22.)  There is not

19  even a boilerplate conclusory allegation to such effect.  Indeed, the Complaint repeatedly seeks

20  actual and direct damages to remedy Gammino's purported harm from his purchases.  (*See id.*

21  ¶¶ 196, 202, 209 & Prayer for Relief (seeking damages from Kroger on the same grounds as he

22  seeks equitable relief).)  There is no explanation as to why these legal remedies based on the

23  same underlying purchases and harms are insufficient.

24          Based on settled Ninth Circuit law, Gammino's equitable claims and accompanying

25  requests for equitable monetary or injunctive relief should thus be dismissed.  *See Sonner*, 971

26  F.3d at 845 ("because Sonner fails to demonstrate that she lacks an adequate legal remedy in this

27  case, we affirm the district court's order dismissing her claims for restitution"); *Banks v. R.C.*

28  *Bigelow, Inc.*, 2021 U.S. Dist. LEXIS 84385, at *15 (C.D. Cal. May 3, 2021) (collecting cases);

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2021 U.S. Dist. LEXIS 59875, at \*30–31 (N.D. Cal. Mar. 29, 2021); *Quynh Phan v. Sargento Foods, Inc.*, 2021 U.S. Dist. LEXIS 103629, at \*16 (N.D. Cal. June 2, 2021); *Drake v. Toyota Motor Corp.*, 2021 U.S. Dist. LEXIS 98381, at \*20 (C.D. Cal. May 17, 2021) (dismissing equitable claims including UCL and CLRA with prejudice because "Plaintiffs fail to include any substantive allegations that they lack an adequate legal remedy"); *Rodriguez v. Just Brands USA, Inc.*, 2021 U.S. Dist. LEXIS 94413, at \*21 (C.D. Cal. May 18, 2021) (dismissing equitable monetary claims based on UCL, FAL, and CLRA with prejudice:  "Plaintiff fails to plausibly allege it lacks an adequate remedy at law for restitution beyond the damages it already seeks through its other claims.  Although Plaintiff attempts to seek equitable relief merely in the alternative to actual damages, 'legal and equitable claims based on the same factual predicates are not true alternative theories of relief but rather are duplicative.'"); (dismissing plaintiff's claims for equitable relief based on plaintiff's failure to allege there is no adequate legal remedy for the alleged harm); *Shay*, 2021 U.S. Dist. LEXIS 84415, at \*12 (dismissing equitable claim and relief with prejudice for failure to allege inadequacy of legal remedies).

### B.    Additional Reasons Compel Dismissal.

A number of Gammino's individual causes of action also suffer from claim-specific legal defects.  They should be dismissed as a matter of law.

### 1.    Gammino's Ohio Statutory Claim Is Not Adequately Alleged.

Gammino not only lacks standing to bring a claim under the Ohio Consumer Sales Practices Act (OCSPA), he has failed to allege any claim under that foreign law.

"The OCSPA is more restrictive than other consumer protection laws, and only allows class claims to proceed where 'the defendant was sufficiently on notice that its conduct was deceptive or unconscionable.'"  *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 992 (N.D. Cal. 2016) (quoting *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 868 (S.D. Ohio 2012)).  "A defendant is 'sufficiently on notice' where either: '(1) a specific rule or regulation has been promulgated [by the Ohio Attorney General] that specifically characterizes the challenged practice as unfair or deceptive, or (2) an Ohio state

court has found the specific practice either unconscionable or deceptive in a decision open to public inspection.'"  *Corcoran*, 169 F. Supp. 3d at 992.

Gammino does not allege any "specific" Ohio rule or regulation promulgated by the Ohio Attorney General or Ohio court decision relating to malic acid or any other purported deceptive or unconscionable conduct.  (*See* Compl. ¶¶ 161–81.)  The Complaint cites only to general rules forbidding "unfair, deceptive, and unconscionable sales practices" and generally claims that Kroger's "conduct violates Ohio law."  (*Id.* ¶¶ 162, 169–71.)  But this invocation of general rules "is not sufficient to put a reasonable person on notice of the prohibition against a specific act or practice."  *Corcoran*, 169 F. Supp. 3d at 992 (citing *Volbers-Klarich v. Middletown Mgmt.*, 929 N.E.2d 434, 441 (Ohio 2010) ("To permit a generic rule to constitute prior notice . . . would allow *any* previous determination of a deceptive act or practice to qualify as prior notice for any subsequent alleged deceptive act or practice.")).  As in *Cororan*, Gammino has "not pointed to any [Ohio] rule or case that prohibits the *specific* practices of [defendant] alleged to be unconscionable."  *Corcoran*, 169 F. Supp. 3d at 992.

Gammino's OCPSA claim should thus be dismissed.  *See Corcoran*, 169 F. Supp. 3d at 992 (dismissing OCSPA claim because "Plaintiffs have not pointed to any rule or case that prohibits the *specific* practices of CVS alleged to be unconscionable"); *Schmitt v. Younique LLC*, 2017 U.S. Dist. LEXIS 223452, at *14–15 (C.D. Cal. Dec. 4, 2017) (dismissing OCSPA claim because "Plaintiffs must plead a court decision or a rule from Ohio's Attorney General which shows that the alleged wrongful practice was unlawful at the time it occurred").

### 2.    The Warranty Claims Fail for Lack of Pre-Suit Notice.

The express and implied warranty claims independently fail because Gammino did not provide Kroger with any pre-suit notice of breach.

"To avoid dismissal of a breach of contract or breach of warranty claim in California, '[a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach.'"  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (citing *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1144 (N.D. Cal. 2010)).  "The purpose of giving notice of breach is to allow the breaching party to

cure the breach and thereby avoid the necessity of litigating the matter in court." *Id.* "This purpose would be completely undermined if it could be satisfied with the giving of post-suit notice." *Id.* Thus, "the notice requirement means pre-suit notice." *Id.*

Gammino's warranty claim fails because he fails to allege that he provided pre-suit notice to Kroger. The Complaint only alleges that "[w]ithin a reasonable amount of time after Plaintiff discovered that the Products contained synthetic flavoring, Plaintiff notified Kroger of such breach." (Compl. ¶ 175.) But Gammino allegedly discovered the malic acid issue in "April 2021" (*id.* ¶ 104) and his complaint was filed on April 22, 2021 (ECF No. 1). Indeed, the notice Gammino supposedly timely provided was sent on May 14, 2021, weeks *after* his complaint was filed. (RJN, Ex. B; *see also* Harper Decl. ¶ 3.) The Court may and should take judicial notice of Gammino's supposed notice, which he incorporates by reference in his Complaint (Compl. ¶ 175) to establish a necessary element of his claim.

Even absent Gammino's letter, based on federal pleading standards, Gammino cannot rely on his conclusory and ambiguous pleading to meet his affirmative burden to show that he provided pre-suit notice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (the court is "not bound to accept as true a legal conclusion couched as a factual allegation"); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) ("Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true . . . ."). The failure is particularly acute in this case given the differently labeled products at issue and the years-long time period in which Gammino made his purchases.

Gammino's failure (and inability) to allege *pre-suit* notice is fatal to his express and implied warranty claims. *See Alvarez*, 656 F.3d at 932 ("We therefore must conclude that Plaintiffs failed to plead that they provided reasonable notice . . . because their notice letter was sent to Defendants simultaneously with service of the complaint."); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 929–30 (N.D. Cal. 2012) (dismissing warranty claims with prejudice for failure to provide pre-suit notice); *Arata v. Tonegato*, 152 Cal. App. 2d 837, 841 (1957) ("[T]he filing of the suit cannot constitute notice"); *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 137 (2008) ("The first time Cardinal provided any notice to T & B was

1   when Cardinal served its lawsuit on T & B.  This did not comply with the statutory

2   requirement.").

3            **3.      Gammino's "Unfair" UCL Claim Fails.**

4            Gammino's claim under the "unfair" prong of the UCL also fails.  (*See* Compl. ¶¶ 134–

5   161.)  While the UCL prohibits "unfair" conduct, "[i]n consumer cases, the Supreme Court has

6   not established a definitive test to determine whether a business practice is unfair."  *Drum v. San*

7   *Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256 (2010).  One test requires the "unfair"

8   conduct to be "tethered to specific constitutional, statutory, or regulatory provisions."  *Id.*

9   (citation omitted).  Where there is no violation or incipient violation, however, the test is not met.

10  *See id.*  As Gammino does not sufficiently allege a violation of the CLRA or FAL here, as will

11  be explained in more detail below, he does not satisfy this test.

12           A second test looks at whether the alleged business practice "is immoral, unethical,

13  oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh

14  the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Id.* at

15  257 (quoting *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1260 (2006)).  In

16  arguing that Kroger's conduct is unfair, Gammino regurgitates the boilerplate legal conclusion.

17  (*See* Compl. ¶ 138 ("Defendant's conduct in unlawfully packaging, labeling, advertising, and

18  distributing the Product in commerce in California violated California law.").)  As numerous

19  courts have held, without further factual allegations, this is insufficient.  *See Davis v. HSBC*

20  *Bank*, 691 F.3d 1152, 1171 (9th Cir. 2012) ("[W]e will affirm a judgment of dismissal where the

21  complaint fails to allege facts showing that a business practice is unfair").  Such "[t]hreadbare

22  recitals of the elements of a cause of action . . . do not suffice."  *Iqbal*, 556 U.S. at 678.  Kroger's

23  labeling is not "immoral, unethical, oppressive, unscrupulous or substantially injurious" because

24  the malic acid used in the Products is not an artificial flavor under 21 C.F.R. § 101.22, and the

25  Products purchased by Gammino, specifically the "Black Cherry" flavor, is clearly labeled as

26  "artificially flavored."  (Compl. ¶¶ 12, 13.)

27           A third test for unfairness holds that a practice is unfair if:  (1) the consumer injury is

28  substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or

competition; and (3) the injury is one that consumers themselves could not reasonably have avoided.  *Drum*, 182 Cal. App. 4th at 257.  Gammino, again, has not alleged any facts demonstrating that his alleged injury is "substantial," nor has he demonstrated that his alleged injury is not outweighed by the many countervailing benefits of the Kroger-labeled sparkling-water beverage or that he could not have avoided the injury by purchasing some alternative product.  Gammino, instead, again engages in boilerplate pleading which, as explained above, is insufficient.  (*See* Compl. ¶ 138.)  This Court should thus dismiss Gammino's unfairness claim.

### 4.   Gammino's "Unlawful" UCL Claim Fails

Gammino's "unlawful" UCL claim is predicated upon his alleged UCL, FAL, and CLRA violations.  (Compl. ¶ 138.)  As each of his underlying statutory violation claims fails, so too does Gammino's "unlawful" UCL claim.  *See Bunce v. Ocwen Loan Servicing, LLC*, 2013 U.S. Dist. LEXIS 100111, at *19 n.2 (E.D. Cal. July 16, 2013) ("To the extent plaintiff bases his UCL claim on 'unlawful' or 'unfair' conduct, plaintiff has failed to adequately allege an underlying violation of another law to satisfy the 'unlawful' prong.").

### 5.   Gammino's Money Had and Received Claim Fails.

Gammino's "common count" for "money had and received" also fails as a matter of law for at least three reasons.

*First*, this equitable claim fails because Gammino has not alleged any underlying predicate equitable claim for the reasons set forth above.  "A common count is not a specific cause of action, however; rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness . . . ."  *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 870 (N.D. Cal. 2019).  Therefore, "a common count for money had and received rises and falls with the underlying equitable claims."  *Id.*; *see, e.g.*, *McBride v. Boughton*, 123 Cal. App. 4th 379, 395 (2004) (dismissing common claim based on dismissal of underlying cause of action); *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1042 (N.D. Cal. 2012).  Here, because Gammino's equitable claims, e.g., under the UCL and CLRA fail as a matter of law, so does his common count for money had and received.

*Second*, the common count fails because Gammino has failed to allege its elements.  The elements of a "money had and received" common count claim are as follows:  "(1) defendant received money; (2) the money defendant received was for plaintiff's use; and (3) defendant is indebted to plaintiff."  *Lincoln Nat'l Life Ins. Co. v. McClendon*, 230 F. Supp. 3d 1180, 1190–91 (C.D. Cal. 2017).  Gammino's Complaint includes no factual allegations or even conclusory recitations that the "money defendant received was for plaintiff's use."  (*See* Compl. ¶¶ 211–22.) To the contrary, Gammino paid Kroger money over a period of years in exchange for beverages that he continued to enjoy for years.  (*Id.* ¶¶ 219.)  Gammino's allegations of mislabeling of a product he purchased is not sufficient to state a common count claim for money had and received.  *See Leonhart v. Nature's Path Foods, Inc.*, 2014 U.S. Dist. LEXIS 164425, at *23 (N.D. Cal. Nov. 21, 2014) (dismissing with prejudice claim for money had and received based on allegations that defendant sold "misbranded" food products did not state a claim for money had and received); *Michael v. Honest Co.*, 2016 U.S. Dist. LEXIS 189116, at *83 (C.D. Cal. Dec. 6, 2016) (dismissing claim for money had and received based on allegations that defendant "sold products by making alleged misstatements about them").

*Third*, the common count fails for lack of specificity.  To successfully plead the claim, a plaintiff must allege that the defendant "is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff."  *Walter v. Hughes Communs., Inc.*, 682 F. Supp. 2d 1031, 1047 (N.D. Cal. 2010) (quoting *Schultz v. Harney*, 27 Cal. App. 4th 1611, 1623 (1994)).  The plaintiff must allege a "definite sum" of money owed to him.  *Walter*, 682 F. Supp. 2d at 1048 (dismissing money had and received claim for failure to allege "definite sum" owed to him "as a result of deceptive advertising practices").

### 6.      Gammino Also Fails to Satisfy Rule 9(b).

Last, all Gammino's claims fail because he does not satisfy Federal Rule of Civil Procedure 9(b), which requires Gammino to plead with specificity "the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false."  *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  Claims sounding in fraud require that a plaintiff alleging fraud "must state with particularity the

circumstances constituting fraud." *See Kearns*, 567 F.3d 1120 at 1124.  A claim "sounds in fraud" if it is based on allegations of "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003); *Kearns*, 567 F.3d at 1126.  Gammino does not state any of the "circumstances constituting fraud[,]" rather, he vaguely references the last time he bought an unspecified flavor in February 2021 at unspecified locations in Santa Cruz, California.  (Compl. ¶¶ 91, 93.)

Here, the crux of the Complaint is that Kroger made "fraudulent" representations or omissions to consumers (Compl. ¶¶ 18, 37, 135, 161, 203–04) that "Plaintiff was deceived by and relied upon" resulting in harm to consumers. (*Id.* ¶¶ 95, 147–48, 203.)  However, Plaintiff only alludes to purchasing the "Black Cherry" flavor but does not state this with specificity or whether he purchased this or any of the other flavors.  (*Id.* ¶¶ 12, 13.)  Furthermore, Gammino does not state with any particularity what date, location, time, flavor of Product, or quantity of Products he purchased.  Rather than specifically alleging required details in his Complaint, Gammino makes vague allegations to purchasing an unspecified flavor in an unspecified quantity at an unspecified time.  Gammino's Complaint fails for its lack of specificity.

## VI.   CONCLUSION

The Court should dismiss Gammino's Complaint.  Because Gammino's legal deficiencies cannot be remedied, the Court should dismiss his claims with prejudice.

DATED: June 14, 2021                           Davis Wright Tremaine LLP

By: /s/ Jacob M. Harper
Jacob M. Harper

*Attorneys for Defendant*
*The Kroger Company*